STATE OF CONNECTICUT *v.* SHERMAN COFIELD
(13994)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, BORDEN and SANTANIELLO, Js.

Argued May 30—decision released August 6, 1991

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, was *John T. Redway,* state's attorney, for the appellant (state).

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellee (defendant).

SHEA, J. After the trial court, *Stengel, J.,* had denied his motion to suppress evidence, the defendant, Sherman Cofield, entered a conditional plea of nolo contendere pursuant to General Statutes (Rev. to 1987) § 54-94a[1] to the charges of possession of narcotics with

---

[1] General Statutes (Rev. to 1987) § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A

intent to sell, possession of marihuana and interfering with an officer, in violation of General Statutes (Rev. to 1987) §§ 21a-277 (a), 21a-279 (c) and 53a-167a respectively.[2] Thereafter, the trial court, *R. O'Connell, J.,* found the defendant guilty as charged and sentenced him to the custody of the commissioner of correction for a term of three years and nine months. The defendant appealed from the judgment of conviction to the Appellate Court, claiming that the evidence was the fruit of an unlawful seizure by the police, and that the trial court, therefore, should have granted his motion to suppress.[3] The Appellate Court concluded that the

plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution.''

[2] General Statutes (Rev. to 1987) § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned.''

General Statutes (Rev. to 1987) § 21a-279 (c) provides: "Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marihuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, may be fined not more than one thousand dollars, or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense may be imprisoned not more than five years, or fined not more than three thousand dollars or be both fined and imprisoned.''

General Statutes (Rev. to 1987) § 53a-167a provides in pertinent part: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties.''

[3] Although the defendant did not specify in his motion the items he sought to have suppressed, the defendant and the state agreed at the hearing that the motion covered all items the state would have sought to introduce at

police did not have a reasonable and articulable suspicion that would justify the stop and therefore reversed the judgment of the trial court. *State* v. *Cofield,* 22 Conn. App. 10, 576 A.2d 156 (1990). Upon the granting of certification on three issues,[4] the state appealed to this court.

The state claims that the Appellate Court should have concluded that the trial court properly denied the defendant's motion to suppress. The state urges us to follow the United States Supreme Court's recent decision in *California* v. *Hodari D.,* 499 U.S.       , 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991), and conclude that at the time the pertinent evidence was obtained, the defendant had not been seized and that, therefore, the evidence was not the fruit of an unlawful seizure.[5] In the alternative, the state asserts that, even if the

the defendant's trial, including items taken from the defendant's person, the interior of his car and the area surrounding his car.

[4] We granted the state's petition for certification to appeal limited to the following issues:

"1.   Did the Appellate Court correctly find a fourth amendment seizure in the absence of the intentional acquisition of physical control over the defendant by the police?

"2.   Alternatively, where a police officer was walking parallel to and had reached the exterior rear of the car in which the defendant was seated, with a drawn gun that was held at his side but not pointed, did the Appellate Court properly hold that from the perspective of a reasonable person the display of the weapon converted this approach into a detention?

"3.   Assuming, arguendo, that the defendant was seized, should the Appellate Court have reversed the trial court's finding that the seizure was justified by reasonable and articulable suspicion of criminal activity when it failed to defer to the trial court's factual determinations?" *State* v. *Cofield,* 215 Conn. 813, 576 A.2d 542 (1990).

[5] In *California* v. *Hodari D.,* 499 U.S.       , 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991), the United States Supreme Court held that in the absence of "a laying on of hands or application of physical force to restrain movement"; id., 1550; a fourth amendment "seizure" requires a show of police authority that: (1) conveys a message to a reasonable person that he is not free to leave; id.; and (2) results in *"submission* to the assertion of authority." (Emphasis in original.) Id., 1551.

defendant had been seized, the seizure was justified by the investigating police officer's reasonable and articulable suspicion that the defendant had engaged in criminal activity. We conclude that the police had a reasonable and articulable suspicion that justified a brief detention of the defendant, and that, therefore, the evidence seized was the product of a lawful seizure. Accordingly, without addressing the issue of whether there was a seizure, we reverse the judgment of the Appellate Court.

At the hearing on the defendant's motion to suppress, the trial court could reasonably have found the following facts. On the evening of November 21, 1987, the defendant drove a friend to the Maplewood Terrace housing project in Middletown. The defendant parked his car, a 1988 white Pontiac LeMans, in the rear of a partially lit and nearly full parking lot designated as parking lot number three. The defendant's car was facing the road. After his friend left the car, the defendant met two other males with whom he was acquainted and they entered his car.

On the same evening, Sergeant Frank Violissi, a seventeen year veteran of the Middletown police department and the police officer in charge of the department's street crime unit, received a telephone call from a confidential informant who had provided him with useful information in the past that had led to narcotics arrests. The informant told Violissi that a black male was selling drugs at Maplewood Terrace. Violissi and two members of the street crime unit drove in an unmarked car and met with the informant a short distance from Maplewood Terrace. Violissi arranged for the informant to make a controlled buy of narcotics from the alleged seller.

About fifteen minutes later, the informant returned with what appeared to Violissi to be cocaine. The infor-

mant told the officers that he had purchased the drugs from a black male named Sonny who was wearing a red hat and was seated in the driver's seat of a 1987 blue Chevrolet Beretta with two other male passengers. The informant did not indicate the car's shade of blue. The informant told Violissi that the car was parked in the rear of parking lot number three and was facing the road.

Violissi and the other officers drove to parking lot number three. The officers watched the defendant's car for about thirty seconds from a distance of fifteen to twenty feet and saw no suspicious activity. Violissi did not notice any blue cars or other occupied cars in the parking lot. He believed the defendant's car was the car described to him by the informant. The officers then backed up their car and parked about thirty-five feet behind the defendant's car. Violissi and one of the officers, both dressed in plain clothes with badges on chains around their necks, decided to approach the defendant's car to corroborate further the information supplied by the informant. On the basis of his experience in the Maplewood Terrace area, Violissi believed himself to be entering a life threatening situation. He therefore drew his gun and carried it by his side as he approached the defendant's car.

When Violissi reached the rear of the car on the driver's side, the defendant looked into his outside rearview mirror and saw a man with a gun rapidly approaching his door. He turned around and looked at Violissi through the car window. The defendant then exited his car, pushed Violissi, and began throwing things from his clothing. Violissi testified that he recognized the items as money and contraband. He identified himself as a police officer and grabbed the defendant with his left hand. A struggle ensued. Additional police officers arrived to assist Violissi and the defendant was arrested along with the other occupants of the car.

In reviewing the Appellate Court's reversal of the trial court's finding that a brief detention of the defendant was justified by the police officer's reasonable and articulable suspicion of criminal activity, we undertake a two-part analysis. First, we ascertain whether the trial court's underlying factual findings were clearly erroneous. *State* v. *Torres,* 197 Conn. 620, 625, 500 A.2d 1299 (1985); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); see Practice Book § 4061. Second, in light of the facts found by the trial court, we determine whether the Appellate Court was correct in concluding that the police officer lacked a reasonable and articulable suspicion of criminal activity on which to base his initial investigative approach to the defendant's car. "The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts." *State* v. *Torres,* supra; *State* v. *Lasher,* 190 Conn. 259, 267, 460 A.2d 970 (1983). We conclude that the trial court's determination that Violissi had a reasonable and articulable suspicion that the defendant was the person described by the informant is supported by the facts found by the court from the evidence. Accordingly, we reverse the Appellate Court.

It is well established that the fourth amendment to the United States constitution allows a police officer to detain an individual briefly for investigative purposes if the officer has a "reasonable and articulable suspicion" that the individual is engaged in criminal activity. *Alabama* v. *White,* 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990); *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Mitchell,* 204 Conn. 187, 527 A.2d 1168, cert. denied, 484 U.S. 927,

108 S. Ct. 293, 98 L. Ed. 2d 252 (1987).[6] The police officer's decision to do so must be based on more than hunch or speculation. "In justifying the particular intrusion 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry* v. *Ohio,* supra, 21." *State* v. *Januszewski,* 182 Conn. 142, 148–49, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). A recognized function of a constitutionally permissible *Terry* stop is to maintain the status quo for a brief period of time to enable the police to investigate a suspected crime. *State* v. *Braxton,* 196 Conn. 685, 689, 495 A.2d 273 (1985).

In evaluating the validity of such a stop, courts consider whether, in light of "the totality of the circumstances—the whole picture," the police officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States* v. *Cortez,* 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *State* v. *Mitchell,* supra, 195. When, as in this case, an officer's decision to detain a suspect briefly is based on information received from an informant, the task of the reviewing court is akin to a probable cause determination. In the probable cause context, we have recently departed from the "two-pronged test" of *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), in favor of the "totality of the circumstances" approach of *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). *State*

---

[6] In *State* v. *Lamme,* 216 Conn. 172, 579 A.2d 484 (1990), we held that *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), is the law governing pre-arrest detentions under the Connecticut constitution.

v. *Barton,* 219 Conn. 529, 594 A.2d 917 (1991). Just as we made clear in *Barton* that the informant's "veracity," "reliability," and "basis of knowledge" remain "highly relevant"; id., 539–40; "[t]hese factors are also relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard." *Alabama* v. *White,* supra, 328–29.

As a threshold matter, we assume that the defendant was seized for the purpose of an investigative detention at some point before he discarded the contraband, and that his rights under the fourth and fourteenth amendments[7] were therefore implicated. The remaining question is whether the police officer had sufficient justification to warrant the detention of the defendant.

At the suppression hearing, the trial court found that the informant was credible and reliable, that Violissi had been able to corroborate the information he had received, and therefore, that he had a reasonable and articulable suspicion of criminal activity that justified detaining the defendant for further investigation. Consequently, the trial court denied the defendant's motion to suppress the evidence seized. On appeal, a divided panel of the Appellate Court reversed, finding "that the obvious discrepancies between the informant's description and the situation found by the police rendered the officer's suspicion speculative and unreasonable." *State* v. *Cofield,* supra, 20. The majority concluded that the police did not have a reasonable and articulable suspicion that would justify the stop. Id., 20–21. Viewing

[7] The fourth amendment to the United State constitution, made applicable to the states through the due process clause of the fourteenth amendment in *Wolf* v. *Colorado,* 338 U.S. 25, 28, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949), provides in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

the totality of the circumstances in this case, we conclude that the informant had supplied Violissi with information that had sufficient indicia of reliability and corresponded adequately to his observations in the parking lot to provide him with reasonable and articulable suspicion sufficient to justify approaching the defendant's car for further investigation.

The trial court found that the informant had been known to Violissi for about eight months, and had recently provided information regarding narcotics activities that had led to narcotics arrests and seizures. The trial court also found that Violissi had corroborated the information given by the informant to some extent. As anticipated, Violissi found the car in the third of four parking lots of Maplewood Terrace, in the rear of that lot, facing the street. Moreover, the car was new, its driver was a black male and two other male occupants were present, as the informant had stated. Although "[a]ny one of these factors is not by itself proof of illegal conduct," taken together "they amount to reasonable suspicion." *United States* v. *Sokolow*, 490 U.S. 1, 9, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). Therefore, the trial court was justified in concluding that the informant was credible and the information he gave Violissi was reliable.

Although acknowledging that the informant had previously supplied reliable information, the majority of the Appellate Court found it "improbable that, having given such a detailed description [of the car], the informant would have been mistaken as to every detail" of the car's "color, make, model and year." *State* v. *Cofield*, supra, 20. The issue, however, is not whether the informant was correct. The issue is whether Violissi's suspicions should have been dispelled by the discrepancies between the car the informant described and the defendant's car. "Reasonable suspicion is a less

demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama* v. *White,* supra, 330.

At the hearing, Violissi testified that he believed the defendant's car was in fact the car the informant described. He admitted that he did not know the difference between different car makes and models. The only discrepancy from the information given by the defendant that he noted was in the color of the car. Violissi attributed this discrepancy to the effect of the lighting conditions, which might have caused the informant to misperceive the color white as light blue. The presence of discrepancies in an informant's account does not necessarily undermine the reasonable suspicion of the police. In *Adams* v. *Williams,* 407 U.S. 143, 147, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972), the United States Supreme Court found that an *unverified* tip from a known informant was sufficiently reliable to justify a *Terry* stop. On the basis of the information that Violissi was able to corroborate, he made the decision to investigate further.

The trial court credited Violissi's version of the events leading up to the defendant's arrest. The court made an express finding that Violissi lacked knowledge "of what different automobiles are." The Appellate Court majority indicated its disbelief of Violissi's testimony by suggesting that a reasonable police officer with seventeen years on the police force would have been familiar with different car makes and models and would not have confused a new Chevrolet Beretta with a new Pontiac LeMans. *State* v. *Cofield,* supra, 18. The

majority, however, has misconstrued its function as a reviewing court. The determination of a witness' credibility is the special function of the trial court. "This court cannot sift and weigh evidence." *State* v. *Cofield,* supra, 26 *(E. O'Connell, J.,* dissenting); *Robert S. Weiss & Co.* v. *Mullins,* 196 Conn. 614, 621, 495 A.2d 1006 (1985); *State* v. *Staples,* 175 Conn. 398, 407, 399 A.2d 1269 (1978).

In this close case the trial court might well have determined the facts differently and thus concluded that Violissi lacked the reasonable and articulable suspicion necessary to justify the detention of the defendant. Nevertheless, "[t]he factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of the circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us." *Lupien* v. *Lupien,* 192 Conn. 443, 445, 472 A.2d 18 (1984). Our review of the record shows that in light of the facts found by the trial court, Violissi was not acting on a whim or speculation, but upon his reasonable suspicion, sufficiently articulated in his testimony, that the defendant's car was the car described by the informant. Thus, we hold that the trial court properly concluded that the information provided by the informant, as corroborated by Violissi's observations, was sufficient to raise such a suspicion and to justify an investigative detention.

Our conclusion that the Appellate Court incorrectly reversed the trial court's determination that a reasonable and articulable suspicion of criminal activity existed makes it inappropriate for us to consider the federal and state constitutional issues raised by *California* v. *Hodari D.,* supra. " 'Constitutional issues are not considered unless absolutely necessary to the deci-

sion of a case.' *State* v. *DellaCamera,* 166 Conn. 557, 560–61, 353 A.2d 750 [1974]; 16 Am. Jur. 2d, Constitutional Law, §§ 111, 113; see *Pi* v. *Delta,* 175 Conn. 527, 534, 400 A.2d 709 [1978]; *Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 346–47, 56 S. Ct. 466, 80 L. Ed. 688 [1936] (Brandeis, J., concurring)." *State* v. *Onofrio,* 179 Conn. 23, 37–38, 425 A.2d 560 (1979). Therefore, we decline to address these constitutional issues. See *Alexander* v. *Robinson,* 185 Conn. 540, 548, 441 A.2d 166 (1981).

The judgment is reversed and the case is remanded to the Appellate Court with direction to reinstate the judgment of the trial court.

In this opinion PETERS, C. J., CALLAHAN, COVELLO, BORDEN and SANTANIELLO, Js., concurred.

GLASS, J., dissenting. While unsuspiciously sitting in his 1988 white Pontiac LeMans in a Middletown "high crime" area, the defendant was as equally entitled to the constitutional freedom from unreasonable governmental curtailment of his personal liberty as a Connecticut citizen in any other area of this state. Many of our less fortunate citizens are forced to establish their homes in or near locales of criminal repute, or they travel to such places to call upon friends or engage in an infinite range of innocuous human activities. Because the " 'high crime area' factor is not an 'activity' of an individual"; *People* v. *Bower,* 24 Cal. 3d 638, 645, 597 P.2d 115, 156 Cal. Rptr. 856 (1979); the crime rate of a particular area cannot transform "otherwise innocent-appearing circumstances into circumstances justifying the seizure of an individual." Id. A history of past criminal activity in a locality "does not justify suspension of the constitutional rights of everyone, or anyone, who may subsequently be in that locality." *People* v. *Aldridge,* 35 Cal. 3d 473, 479, 674 P.2d

240, 198 Cal. Rptr. 538 (1984); see *United States* v. *Torres-Urena,* 513 F.2d 540, 542–43 (9th Cir. 1975).

As the majority acknowledges, Sergeant Frank Violissi detected "no suspicious activity" while he watched the defendant in the well lighted parking lot number three of Maplewood Terrace. Violissi also *did not see* a red hat on the defendant's head, reportedly there some fifteen minutes earlier, nor did Violissi see the defendant in the driver's seat of a 1987 blue Chevrolet Beretta, although he testified that he had "[j]ust looked in the parking lot" for a car of that year, color, make and model. What Violissi did see after a thirty second observation from ten to fifteen feet was the hatless black defendant in a 1988 white car, clearly and visibly marked with the make and model "Pontiac LeMans," in the "general area" wherein the informant had recounted that a black man had been selling "large amounts of cocaine." Given the fact that black and Hispanic persons predominantly inhabit Maplewood Terrace, it was not, as Violissi agreed in court, "an unusual event to find a car with black people sitting in it in a parking lot at Maplewood Terrace." Neither, presumably, was it unique to behold a new car in one of nearly fifteen spaces aligning the road in lot number three of Maplewood Terrace, which Violissi testified had been "full of cars." Notwithstanding the unremarkable and unsuspicious scene that Violissi encountered there, and despite the conspicuous absence of the only significant descriptive details that would have set the drug dealer that he sought apart from inculpable individuals in the vicinity, Violissi, indulging the "gut feeling" admittedly engendered by his experiences in and the reputation of Maplewood Terrace, impulsively drew his gun and seized the defendant.

In the name of deference to the trial court's demeanor determinations, the majority exonerates

Violissi for his failure to comprehend the vital omissions in that scene on the grounds that he truthfully testified that the "only discrepancy he noted" between what he had seen in parking lot number three and what he had been informed that he would see "was in the color of the car," which he credibly claimed that he had attributed "to the effect of the lighting conditions which might have caused the informant [possibly to] misperceive the color white as light blue," and further, that he sincerely stated that he "did not know the difference between different car makes and models" and "believed the defendant's car was in fact the car the informant described." The issue in the present case is not, however, whether Violissi subjectively suspected the defendant of wrongdoing or honestly believed that the car he had observed was that of the drug dealer described by the informant. Even assuming that the trial court properly found Violissi's suspicions to have been truly harbored, the question of law before this court is whether *the facts available to [Violissi] at the moment of the seizure . . . [would] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?*[1] (Emphasis added.) *Terry* v. *Ohio,* 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). If "subjective good faith" on the part of a detaining officer "alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only in the discretion of the police." Id., 22.

The dictates of the fourth and fourteenth amendments to the United States constitution constrained Violissi to make a reasoned, "common sense" assessment of "all of the circumstances" available to him;

---

[1] In *Terry* v. *Ohio,* 392 U.S. 1, 31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), concurring Justice Harlan noted that a seizure "must be reasonable under the circumstances as the officer credibly relates them in court."

*United States* v. *Cortez,* 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); and proscribed his seizure of any person at Maplewood Terrace unless that assessment of the "whole picture" yielded "a particularized and objective basis for suspecting the particular person stopped of criminal activity." Id. Having previously urged the informant "to go in and get as much details as possible and to come back and supply us with that information," and, having obtained precisely what he had requested, Violissi entered the designated parking area of Maplewood Terrace in possession of particularized and objective facts that afforded him a reasonable basis for suspecting that a black man wearing a red hat and sitting in the driver's seat of a 1987 blue Chevrolet Beretta was engaged in the criminal activity of selling cocaine. Yet, after "get[ting] in real close" to the defendant's car purportedly "to corroborate what the confidential informant told us," Violissi heedlessly overlooked the conspicuous absence of the most particularized and distinctive facts of the lot. He irrationalized away the sole discrepancy that he noted, moreover, on the ground that the informant, whom he had known to have been close enough to the suspected vehicle to purchase drugs from its driver, and, in addition, to report back that "[i]t had blue interior," may have mistaken the color of the car in the well lighted parking area.[2]

The facts available to Violissi at the moment he seized the defendant, in my view, hardly would have warranted a man of reasonable caution in the belief that the action taken was appropriate. See *Terry* v. *Ohio,* supra. If the United States constitution condones such

---

[2] "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, *taken together with the rational inferences from those facts, reasonably warrant that intrusion.*" (Emphasis added.) *Terry* v. *Ohio,* 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

seizures of Connecticut citizens, founded upon hunch and in credibly imprudent indifference to particularized information readily at hand, the " 'demand for specificity in the information upon which police action is predicated [that] is the central teaching of . . . Fourth Amendment jurisprudence' "; (emphasis omitted) *United States* v. *Cortez,* supra, 418; is meaningless indeed.

Accordingly, I respectfully dissent.