[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
Pursuant to a Motion to Suppress Evidence dated September 23, 1993, the defendant Angelo Marino has moved the court to suppress evidence seized by law enforcement officers on April 26, 1993. Testimony was taken on November 18, 1993; February 18, 1993; April 8, 1994; and May 27, 1994. Delays ensued while transcripts were typed and while initial memoranda, and responsive memoranda, were filed.
Defendant has framed the two fundamental issues which must be resolved as follows. First, did police authorities have probable cause to stop defendant's vehicle and search defendant? And second, did police authorities obtain defendant's knowing and voluntary consent to search the motel room in which he had been staying, and in which contraband was found? After reviewing the exhibits and the memoranda of law submitted by counsel, the court concludes that police authorities did have probable cause, and that defendant did knowingly and voluntarily consent to a search of the motel room. The motion to suppress is therefore denied. A brief discussion of the factual background is necessary to place this ruling in context.
BACKGROUND
There is little fundamental disagreement between the parties as to the facts; they differ primarily on the weight to be given to the facts and the inferences and conclusions CT Page 8355 which should be drawn from them. The court finds as follows:
On April 26, 1993, at approximately 6:30 p. m., a confidential information (CI) contacted Patrolman Richard Swan, an officer with the Old Saybrook Police Department with 10 years of experience who had made approximately a dozen narcotics arrests in the previous year. The CI told Swan that defendant Angelo Marino would be driving a GMC pickup truck from New York to the Acorn Motor Lodge (Acorn) in Old Saybrook, CT, that he would be staying in room 4, and that he planned to sell marijuana to one Todd Hirst. The CI, who had provided reliable information to the police in the past resulting in two or three convictions, said that Hirst would be accompanied by his girlfriend, Linda Shuss, and would be driving her two-door Mercury Lynx. The CI, who said he knew that defendant was involved in narcotics trafficking in Old Saybrook and that defendant was known to possess firearms, said defendant would be going back to New York with cocaine in his possession after finishing a transaction with Hirst.
Patrolman Swan and Patrolman Clifford Barrows arrived at the Acorn at approximately 8:30 p. m. and established a surveillance of the premises. The officers observed a GMC pickup truck outside room 4 with New York plates. Defendant was observed standing in the doorway, as if waiting for someone. They observed Hirst arrive at the motel, along with a female passenger, in a Mercury Linx. Hirst was observed to enter defendant's room, remain there for minutes, and then exit.
When Hirst left the vicinity, Patrolman Jay Rankin was notified. Patrolman Rankin stopped Hirst, who was found to possess marijuana. Patrolman Rankin contacted Barrows to tell him what had been discovered.
Approximately five to ten minutes after Rankin contacted Barrows, police observed defendant leave his motel room and get into his pickup truck. Officers Swan and Barrows approached defendant's truck with guns drawn and ordered him out of the vehicle. Their guns were drawn because defendant has been convicted of weapons charges. The CI had also indicated defendant was believed to use a firearm in the course of dealing drugs. Marino was asked if he was armed and responded that he had a knife and some "smoke" in his pocket. A pat down produced some marijuana and the knife. Defendant CT Page 8356 was arrested for possession of the marijuana. At all times defendant was calm and collected.
Defendant was placed in the back seat of the police car of Patrolman Timothy McDonald, who had been dispatched to the scene. Officer Barrows then read defendant his Miranda rights. After informing defendant that he was under no obligation to do so, Barrows asked defendant if he would permit police to search his room. Although he had not yet signed a consent to search form, defendant agreed, continuing to be very cooperative. Defendant told police he had some "coke" in his room, and also indicated he had hidden some cocaine under the seat of the police vehicle.
Defendant was taken to the motel room in handcuffs. Defendant, handcuffed in front, removed the key from his pocket and opened the door. Inside the room, after showing police where he kept cocaine inside a flannel shirt, defendant was again asked to sign a consent form, and he then read and signed a consent to search form, State's Exhibit A, in the presence of the officers. Narcotics, cash and narcotics paraphernalia were discovered in the room. Defendant had previously said it would not be necessary to obtain a written consent to search, prior to entering the room, stating "Fuck it, you got it anyway," or similar words.
The entire encounter took place in a non-hostile environment. There is no evidence that police threatened, coerced or intimidated defendant in any way. There is no indication that defendant lacked understanding of what was asked of him, or what he was doing when he consented to the search of his room.
(1) Police authorities had probable cause to stop and search defendant.
The first issue to be decided is whether police authorities had probable cause to stop and search defendant. The court concludes that they did.
In evaluating this question, this court is guided by our Supreme Court's decision in State v. Barton, 219 Conn. 529
(1991), which adopts a "totality of the circumstances" standard for determining probable cause. Probable cause, as the decisions make clear, is more than "mere suspicion," but CT Page 8357 requires only a finding that police have "reasonable grounds" to believe that a crime is being committed. State v. Hunter,27 Conn. App. 128 (1992). The case law makes it clear that this inquiry should be guided by practical standards. Statev. Cofield, 220 Conn. 38 (1991).
In this case, the court agrees with the state that the facts and circumstances known to the police created reasonable grounds to believe that defendant was about to commit a crime.
First, the CI's veracity was established in that Officer Swan was regularly in contact with him and in that prior information he supplied resulted in two or three convictions.State v. Morrill, 205 Conn. 560, 567 (1987). Additionally, information the informant provided was independently verified by the police. State v. Torres, 230 Conn. 372 (1994); Statev. Rodriquez, 223 Conn. 127 (1992). See also Draper v. UnitedStates, 358 U.S. 307 (1959). As noted by the state, the corroboration included (1) the make and model of defendant's vehicle; (2) the identification of the vehicle driven by Hirst; (3) the arrival of Hirst and his girlfriend within the expected time frame; (4) the fact that the defendant was staying at room number 4 at the Acorn; (5) observation of defendant standing in the doorway at various times, waiting for someone; (6) the fact that Hirst entered defendant's room; (7) the fact that Hirst stayed there only for minutes and then left; and (8) the fact of Hirst's arrest in possession of marijuana. State v. DeFusco, 224 Conn. 627 (1993); State v.Ruscoe, 212 Conn. 223 (1989); see also, State v. Conley,31 Conn. App. 548 (1993). Taken collectively, in the view of the undersigned judge, the officers had a reasonable and articulable basis to believe criminal conduct was occurring.
Officers Swan and Barrows were experienced officers. Things observed by law enforcement officers may have particular significance, in reaching a "probable cause" determination, given their training and experience. Statev. Dukes, 209 Conn. 98 (1988). See also State v. Cofield,220 Conn. 38 (1991); State v. Velez, 215 Conn. 667 (1990); andState v. Rodriquez, 11 Conn. App. 140 (1987), in which as the state notes, a motor vehicle stop was upheld on the basis of minimal, partially correct information provided by an informant. As the state argues, here, Officer Swan knew the CI's identity. CT Page 8358
Considering the "totality of the circumstances," the court finds that the police had "probable cause" to stop and search defendant.[1] The court rejects defendant's argument that the police had to observe defendant drive in the general direction of New York to sustain their view that criminal activity was afoot.
2. Defendant Knowingly and Voluntarily Consented to a Search of the Motel Room
Defendant correctly asserts that the state carries the burden of proving that he knowingly and voluntarily consented to a search of his room at the Acorn. On review of the record, the court concludes that the state has carried its burden. The court's view is shaped by the facts as it finds them, as well as the undersigned judge's evaluation of the credibility of the witnesses who testified, including defendant.
The United States and Connecticut constitutions prohibit unreasonable searches and seizures. State v. Reagan,209 Conn. 1, 7 (1988). A warrantless search is not unreasonable when consent has been freely and voluntarily given.Schneckloth v. Bustamonte, 412 U.S 218 (1973). Whether consent has been freely and voluntarily given is a question of fact for the court to decide in light of all circumstances present. The question is whether consent is the product of unconstrained choice, or whether someone's will has been overborne. State v. Vargas, 34 Conn. App. 492 (1994).
Among the factors the courts will examine in determining whether a suspect has voluntarily consented to a search are (1) whether threats or promises were made; 92) whether firearms were displayed; and (3) whether a suspect has been advised of his right to refuse consent. State v. Torres,197 Conn. 620 (185).
In this case, the court finds that defendant was advised that he did not have to consent to a search of the room if he chose not to. There is no evidence that defendant was coerced or threatened in any way or that force was used, or firearms displayed, to obtain his consent. The evidence fully indicates that defendant acted with full knowledge of what he was doing and as a product of his own choice. The court does CT Page 8359 not conclude that he was tricked into consenting or lulled into consenting by any promise made to him.[2]
Indeed, the court concludes — having observed and evaluated the credibility of the witnesses — that the encounter between police and defendant on April 26, 1993, was cordial. The court attributes this in part to the fact that Mr. Marino, not unfamiliar with the criminal justice system, and a mature man in his late 50's when the incident occurred, acted — to put it colloquially — like a "stand up guy" when he was arrested. The court therefore credits the police testimony that the entire encounter was polite and that defendant's consent was voluntarily obtained.
Finally, the court finds that Officer Barrows read the consent to search form to defendant before he signed it and that defendant knowingly and voluntarily consented to the search. State v. Torres, 197 Conn. 620 (1985); State v.Fields, 31 Conn. App. 312 (1993); State v. Van Der Werff,8 Conn. App. 330 (1986).
For the reasons stated, the Motion to Suppress is denied.
Douglas S. Lavine Judge, Superior court