STATE OF CONNECTICUT *v.* CECIL LIPSCOMB
(SC 16395)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued April 17—officially released September 11, 2001

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Adam Scott*, assistant state's attorney, for the appellant (state).

*Jon L. Schoenhorn*, for the appellee (defendant).

*Opinion*

SULLIVAN, C. J. The sole issue in this appeal is whether the Appellate Court, in reversing the judgment of the trial court, properly concluded that an investigative stop of the defendant's motor vehicle by the police was not justified by reasonable suspicion. We conclude that the trial court properly denied the defendant's motion to suppress evidence obtained by the police during that stop. Accordingly, we reverse the judgment of the Appellate Court.

The state charged the defendant, Cecil Lipscomb, with driving a motor vehicle with a suspended license in violation of General Statutes § 14-215 (c).[1] The defendant moved to suppress evidence that his operator's license was suspended, arguing that the police discovered the suspension after detaining him without reason-

---

[1] General Statutes § 14-215 (c) provides in relevant part: "Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a or section 53a-56b or 53a-60d or pursuant to section 14-227b, shall be fined not less than five hundred dollars nor more than one thousand dollars and imprisoned not more than one year . . . ."

able and articulable suspicion of criminal activity. The trial court denied the defendant's motion to suppress, concluding that the investigative stop conducted by the police was appropriate under the circumstances of this case. The defendant entered a conditional plea of nolo contendere, reserving his right to appeal the trial court's denial of the motion to suppress pursuant to General Statutes § 54-94a.[2] The trial court, accordingly, rendered a judgment of conviction.

The defendant appealed from the judgment of conviction to the Appellate Court. The Appellate Court concluded that the reasons for the stop, as articulated by the officers, did not support a finding of reasonable suspicion. Accordingly, the Appellate Court reversed the trial court's judgment. *State* v. *Lipscomb*, 58 Conn. App. 267, 274–75, 753 A.2d 415 (2000).

We granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that an investigative stop of the defendant's motor vehicle was not justified by a reasonable suspicion?" *State* v. *Lipscomb*, 254 Conn. 932, 761 A.2d 756 (2000). This appeal followed.

At the hearing on the defendant's motion to suppress, the trial court found the following relevant facts. In the late evening hours of March 17, 1998, and the early morning hours of March 18, 1998, Officers Mark Allen and William Spragg of the East Hartford police department were on patrol in a marked police vehicle in the Connecticut Boulevard and Main Street area of East Hartford. Allen observed the defendant's Ford Bronco

---

[2] General Statutes § 54-94a provides in relevant part: "When a defendant . . . enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure . . . the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . ."

travel down Main Street and turn onto Connecticut Boulevard. Allen also observed a woman standing on the corner of Connecticut Boulevard and Main Street "waving her arm." Both officers watched the Bronco approach the woman and saw her enter the vehicle with the defendant. The Connecticut Boulevard and Main Street area in East Hartford is known to police as a "high crime" area, which is often the site of motor vehicle thefts, prostitution, burglaries and robberies. Allen also personally had observed the same woman on the street corner in this area on prior occasions and had learned from Officer Tracy O'Connell that she was involved in prostitution at a local hotel. On the night of the defendant's arrest, Allen made Spragg aware of the woman's reputation as a prostitute. As a result of their observations, the officers followed the defendant's vehicle to a dead-end street where they motioned for him to pull over.[3] The officers conducted a routine motor vehicle check and discovered that the defendant's operator's license was under suspension.

The defendant sought to suppress the evidence of his license suspension, claiming that the officers' stop of his motor vehicle violated the fourth and fourteenth amendments to the United States constitution, and article first, §§ 7, 8 and 9, of the Connecticut constitution.[4] The defendant argued in his motion to suppress that:

[3] There were no motor vehicle violations observed.

[1] The fourth amendment to the United States constitution provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The fourth amendment to the United States constitution is made applicable to the states by the fourteenth amendment. *Mapp* v. *Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). The constitution of Connecticut, article first, § 7, provides in relevant part: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures . . . ." Article first, § 8, of the Connecticut constitution is not pertinent to the issue being addressed here. Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

(1) at the time of the stop, the officers did not have reasonable suspicion to believe that he was committing an offense; (2) the officers did not have reasonable and articulable suspicion to detain him or his vehicle; and (3) the seizure of the defendant, and the subsequent search of his person and vehicle, did not fall within any acknowledged exception to the warrant requirements of the state or federal constitutions.

The trial court conducted an evidentiary hearing on the defendant's motion to suppress and denied the motion. In its denial of the defendant's motion, the trial court held that under the totality of the circumstances the police had detained the defendant only upon "a reasonable and articulable suspicion that criminal activity was occurring or [was] about to occur, to wit, solicitation of prostitution and prostitution. Therefore, the conduct of the East Hartford police officers to accomplish an investigative stop, in order to investigate further the circumstances that give rise to the suspicion of criminal conduct, was appropriate under the circumstances. Furthermore, the resulting information that the defendant's motor vehicle operator's license was under suspension was not obtained illegally."

The defendant appealed from the ensuing judgment of conviction to the Appellate Court, claiming that there was no reasonable and articulable basis for the police to have stopped his motor vehicle, nor was there justification for the subsequent investigation of his license status. He argued that the officers' discovery that he was operating his vehicle with a suspended license should have been suppressed as the fruit of an unreasonable search and seizure. The Appellate Court concluded that the officers' inference that the defendant's passenger was a prostitute was tenuous at best, and that, even if she were a prostitute, her action of waving to the defendant and getting into his car did not amount to "furtive conduct" that should warrant detention by

the police. *State* v. *Lipscomb*, supra, 58 Conn. App. 271. The Appellate Court based its conclusion on *State* v. *Donahue*, 251 Conn. 636, 646–47, 742 A.2d 775 (1999), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000),[5] and *State* v. *Oquendo*, 223 Conn. 635, 655 n.11, 613 A.2d 1300 (1992), in which we held that "[a] history of past criminal activity in a locality does not justify suspension of the constitutional rights of everyone, or anyone, who may subsequently be in that locality." (Internal quotation marks omitted.)

The state claims that the investigative stop of the defendant's motor vehicle was justified by reasonable and articulable suspicion of criminal activity. Specifically, the state argues that the combined circumstances of that evening gave the officers reason to believe the defendant was engaged in soliciting a prostitute.

First, the state argues that the area in which the defendant was detained is known for criminal activity. In addition, the state argues that: (1) both the defendant and his female companion were in an area frequented by local prostitutes; (2) prostitutes in that area routinely stand on street corners and "flag down" customers by waving to signal them to pull to the curb; (3) the officers saw a woman standing on a street corner, late at night, waving her arm and saw the defendant immediately

---

[5] In *State* v. *Donahue*, supra, 251 Conn. 646–47, we stated: "The state's argument that [the officer] was justified in stopping the defendant due to an increase in crime in the area is unpersuasive. We considered and rejected a similar argument in *State* v. *Oquendo*, [223 Conn. 635, 655, 613 A.2d 1300 (1992)]. In *Oquendo*, we held that the officer's detention of the defendant was not justified when the officer's suspicions were based on the following factors: the clothing worn by the defendant; the increased crime rate in the area in which the defendant was walking; the fact that the officer knew the defendant's companion was a recent arrestee for larceny and burglary; and the officer's hunch that the defendant was about to commit a crime. Id., 641. We found that those factors were considered insufficient to make the officer's stop of the defendant constitutionally reasonable." (Internal quotation marks omitted.)

pull his vehicle to the curb, pick her up and drive to a dead-end public street; and (4) the woman picked up by the defendant was suspected of prostitution by the police. The state argues that this "totality of the circumstances" warranted the officers' investigative stop and justified their search of the defendant's motor vehicle history. We agree with the state. Considering the totality of the circumstances, we conclude that the defendant lawfully was detained after police observed suspicious behavior in a high crime area that led them to believe that he had solicited a prostitute. Because these facts support a finding of reasonable and articulable suspicion, we conclude that the trial court properly denied the defendant's motion to suppress.

In reviewing the Appellate Court's reversal of the trial court's finding that a brief detention of the defendant was justified, we undertake a two part analysis. First, it is the function of this court to determine whether the trial court's underlying factual findings were clearly erroneous. *State* v. *Cofield*, 220 Conn. 38, 44, 595 A.2d 1349 (1991); *State* v. *Torres*, 197 Conn. 620, 625, 500 A.2d 1299 (1985); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221, 435 A.2d 24 (1980). Second, "[t]he trial court's conclusions must stand unless they are legally and logically inconsistent with the facts." *State* v. *Torres*, supra, 625; *State* v. *Lasher*, 190 Conn. 259, 267, 460 A.2d 970 (1983). In conducting our review, we recognize that the trial court is given great deference in its fact-finding function because it is in the "unique [position] to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us." *Lupien* v. *Lupien*, 192 Conn. 443, 445, 472 A.2d 18 (1984). In light of the facts found by the trial court, we must determine whether the Appellate Court correctly concluded that the police

lacked a reasonable and articulable suspicion of criminal activity on which to base their initial investigative stop of the defendant's vehicle.

After reviewing the record in this case, we agree with the trial court's conclusion that the police had a reasonable and articulable suspicion to believe that the defendant was engaging in, or was about to engage in, criminal activity.

Under the fourth amendment to the United States constitution and article first, §§ 7 and 9, of our state constitution, a police officer is permitted "in appropriate circumstances and in an appropriate manner" to detain an individual for investigative purposes if the officer believes, based on a "reasonable and articulable suspicion" that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest. *Alabama* v. *White*, 496 U.S. 325, 330–31, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990); *Terry* v. *Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Mitchell*, 204 Conn. 187, 194–95, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion." *State* v. *Torres*, 230 Conn. 372, 379, 645 A.2d 529 (1994); *State* v. *Januszewski*, 182 Conn. 142, 148–49, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

"[I]n justifying [a] particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* v. *Ohio*, supra, 392 U.S. 21; *State* v. *Januszewski*, supra, 182 Conn. 148–49. In determining whether a

detention is justified in a given case, a court must consider if, relying on the whole picture, the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. When reviewing the legality of a stop, a court must examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. *State* v. *Oquendo*, supra, 223 Conn. 654. A recognized function of a constitutionally permissible stop is to maintain the status quo for a brief period of time to enable the police to investigate a suspected crime. *State* v. *Braxton*, 196 Conn. 685, 689, 495 A.2d 273 (1985).

"[E]ffective crime prevention and detection . . . [underlie] the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry* v. *Ohio*, supra, 392 U.S. 22. Therefore, "[a]n investigative stop can be appropriate even where the police have not observed a violation because a reasonable and articulable suspicion can arise from conduct that alone is not criminal." (Internal quotation marks omitted.) *Price-Crowley* v. *Kozlowski*, 49 Conn. App. 481, 485, 714 A.2d 719 (1998); see also *State* v. *Kowal*, 31 Conn. App. 669, 672, 626 A.2d 822, cert. denied, 227 Conn. 923, 632 A.2d 702 (1993); *State* v. *Harrison*, 30 Conn. App. 108, 113, 618 A.2d 1381, aff'd, 228 Conn. 758, 638 A.2d 601 (1994). In evaluating the validity of such a stop, courts must consider whether, in light of the totality of the circumstances, the police officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States* v. *Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *State* v. *Mitchell*, supra, 204 Conn. 195.

We conclude that the *Terry* stop in this case was justified by the totality of the circumstances surrounding the defendant's detention. The facts of the present case present a more compelling argument in favor of the reasonableness of the officers' suspicions than the insufficient facts presented in either *State* v. *Donahue*, supra, 251 Conn. 647–48, or *State* v. *Oquendo*, supra, 223 Conn. 641–43. In *State* v. *Donahue*, supra, 647, this court concluded that the facts that the defendant "was driving in a deserted area late at night . . . made an abrupt turn . . . into an empty, unlit parking lot of an establishment that had closed for the evening" and that the "area had experienced a rise in criminal activity . . . [and that the supect's] behavior was consistent with the type of behavior that often preceded the criminal activity [the officer] was out on patrol investigating," did not give rise to "a reasonable and articulable suspicion," and that "the totality of circumstances [did not] reach the level of a reasonable suspicion found in our precedents." (Internal quotation marks omitted.) We further noted that "the defendant had not committed any traffic violation . . . [h]e had not been driving erratically . . . [n]either he nor his passenger had exhibited any furtive conduct . . . neither the defendant nor his passenger had exited the vehicle . . . the vehicle had not been the subject of any police investigation . . . and [the officer] determined that the vehicle was not stolen . . . ." Id. In *State* v. *Oquendo*, supra, 641, the officer based his suspicion on the fact that, in a neighborhood where several burglaries recently had occurred, the suspect appeared nervous, was carrying a duffel bag and, despite the fact that it was a warm night, was wearing a winter jacket that the officer suspected was to protect his skin when he broke through windows to commit burglaries. *Donahue* and *Oquendo* are distinguishable from the present case. Here, the officers' suspicion that the

woman was a prostitute was reasonable, in light of the facts that she was known to one of the officers as having been involved with prostitution at a local hotel and she was flagging down the defendant's vehicle, late at night, in an area where the police had found prostitution to be common. Furthermore, when the defendant approached the woman in his car and she entered the vehicle, it was reasonable for the officers to believe that the defendant was engaged in soliciting her. The officers did not base their suspicions primarily on the reputation of the neighborhood alone. See *State* v. *Oquendo*, supra, 655 n.11 ("[a] history of past criminal activity in a locality does not justify suspension of the constitutional rights of everyone, or anyone, who may subsequently be in that locality" [internal quotation marks omitted]). The circumstances articulated by the police for conducting their investigative stop exceed those that we rejected in *Donahue* and *Oquendo*.

The facts presented here satisfy our standards for reasonable suspicion that have been established in numerous other cases. See *State* v. *Cofield*, supra, 220 Conn. 46–47 (under totality of circumstances, informant had supplied police with information sufficiently reliable to provide reasonable and articulable suspicion to justify approaching defendant's vehicle for further investigation); *State* v. *Lamme*, 216 Conn. 172, 175, 579 A.2d 484 (1990) (after hearing police broadcast describing vehicle driven by intoxicated individual, officer was justified in stopping vehicle that matched description driving without its headlights illuminated in violation of General Statutes § 14-96a [d]); *State* v. *Januszewski*, supra, 182 Conn. 149 (plainly furtive conduct of occupants of vehicle observed by approaching officer justified limited intrusion upon defendant's personal liberty); *State* v. *Watson*, 165 Conn. 577, 585–86, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974) (police stop of defendant's

vehicle was justified when vehicle was observed pulling into parking lot of motel late at night, dropping off four occupants, who were then observed coming from rear of motel, walking "hurriedly and cautiously" back to car).

Our review of the record indicates that the trial court, consistent with the cases cited previously, properly concluded that the officers had a reasonable basis for their investigative stop. Therefore, the discovery of the defendant's suspended operator's license did not result from an illegal stop in violation of the fourth amendment to the United States constitution or article first, §§ 7 and 9, of the Connecticut constitution. We conclude that the police possessed a reasonable and articulable suspicion that the defendant had committed, or was about to commit a crime, and that the routine check of his license and registration was permissible. Accordingly, we conclude that the trial court properly denied the defendant's motion to suppress.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.