### STATE OF CONNECTICUT *v.* GREGORY R. LINDSEY*

Superior Court, Judicial District of Tolland
File No. MV-03-348306

Memorandum filed March 23, 2005

*Matthew J. Collins,* for the defendant.

*Matthew C. Gedansky,* supervisory assistant state's attorney, for the state.

24, 2001), rev'd on other grounds, 310 F.3d 1063 (8th Cir. 2002), cert. denied, 538 U.S. 993, 123 S. Ct. 1817, 155 L. Ed. 2d 693 (2003).

Notwithstanding the vigor of the Forgiones' argument to the contrary, the court finds that such limits effectively protect any constitutional interests an individual may have when he or she has released subscriber information to an Internet service provider. Here, the court has concluded that by presenting Griffen's information through a search warrant affidavit, and by securing a magistrate's permission before accessing the Forgiones' subscriber information from Charter, the Hamden police utilized the appropriate protocol and observed the "limits" appropriately imposed on their access to the subscriber information at issue, thereby avoiding any constitutional impropriety.

* Affirmed. *State* v. *Lindsey,* 98 Conn. App. 250, 907 A.2d 1261, cert. denied, 280 Conn. 948, 912 A.2d 481 (2006).

DYER, J. The defendant, Gregory R. Lindsey, who was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a, has filed motions to suppress evidence and to dismiss the charge that is pending against him.

Specifically, the defendant contends that the arresting police officer lacked a reasonable and articulable suspicion to stop the defendant's motor vehicle. He claims that because the initial detention was unconstitutional, all evidence that resulted from the stop should be suppressed and the charge should be dismissed.

An evidentiary hearing on the motions was held before the court. The court has carefully considered all of the evidence presented, as well as the thoughtful arguments of fact and law that were presented by counsel. The court finds that the facts set forth were proven at the hearing.

I

FACTUAL FINDINGS

On November 29, 2003, at approximately 12:53 a.m., a dispatcher at the Troop C barracks of the state police received a telephone complaint concerning a robbery. The complainant indicated that he had been robbed while he was sitting in his parked motor vehicle. The caller stated that the incident had occurred on Burbank Road near Boyer Road. The complainant was unsure if he was in Ellington or Tolland.

Joseph Grayeb, an Ellington police officer, was sent to the scene by the state police dispatcher. Grayeb located the complainant's vehicle on Burbank Road in Stafford, just over the town line from Tolland.[1] The complainant alleged that while his vehicle was parked by the side of 243 Burbank Road, he was approached and robbed by a white male, who had initially identified

---

[1] Burbank Road runs through the towns of Ellington, Tolland and Stafford.

himself as an off duty police officer. The man had been driving a full-sized pickup truck. The complainant told Grayeb that the truck was tan or gold in color, with white or silver on the sides. The complainant claimed that in addition to the suspect-operator, there had been two passengers in the truck, one male and the other female. The complainant described the suspect as being a white male, approximately five feet, ten inches tall, who had short brown hair and was wearing a T-shirt. The female passenger was described as having brown hair, which she wore in a ponytail.

Grayeb radioed descriptions of the suspect, the passengers and the pickup truck to the state police dispatcher at Troop C. The dispatcher subsequently broadcast that information over the state police radio network with a request that officers be on the lookout for the suspect's vehicle. Grayeb testified credibly that he transmitted the descriptions within five or ten minutes after he arrived on the scene and spoke with the complainant.

Sergeant Troy Anderson of the state police heard the radio broadcast about the robbery as he was returning from a motor vehicle accident in Ashford and responded to the general vicinity of the incident. Shortly thereafter, he observed a motor vehicle being operated by the defendant on Route 140 near Burbank Road in Ellington. The defendant's vehicle was a silver, full-sized Dodge Dakota 4x4 SXT pickup truck. The defendant, who is a white male, was the only person in the pickup truck.

Anderson testified that when he began to follow the defendant's vehicle, the defendant immediately turned onto another street. That caused the sergeant to suspect that the defendant might be trying to avoid him. Anderson used the flashing lights on his cruiser to signal the defendant to stop. That occurred at approximately 1:21 a.m. at a location several miles from the site of the

robbery. The sergeant testified that prior to the stop, the defendant had been operating the vehicle legally. Anderson did not observe erratic operation, and the defendant had not committed any motor vehicle violations.

Anderson testified that he decided to detain the defendant because the defendant's vehicle was a pickup truck fitting the general description of the suspect's vehicle and was being operated in relative proximity to the crime scene shortly after the robbery was reported on the radio.[2] The sergeant stated that those facts, and his perception that the defendant was trying to avoid him by turning onto a different street, prompted him to stop and to investigate the defendant. The court found that testimony to be credible.

Anderson reported his location to Troop C and approached the defendant's truck alone. The sergeant testified that he was able to determine within a short period of time that the defendant was not implicated in the robbery. Anderson, however, noticed the odor of an alcoholic beverage emanating from the defendant, and the defendant produced a credit card when asked for his operator's license. The sergeant suspected at that point that the defendant had been operating the vehicle while under the influence of intoxicating liquor. The defendant was subsequently arrested and charged with that offense by another state trooper who responded to the scene.

## II

## DISCUSSION

Both the United States constitution and the constitution of Connecticut provide protection against unreasonable searches and seizures by the government.[3] Our

[2] Anderson testified that he was on the lookout for a truck that was "gold or a similar color."

[3] That protection is guaranteed by the fourth amendment to the United States constitution and by article first, §§ 7, 8 and 9, of the constitution of Connecticut.

Supreme Court has ruled that the definition of "seizure" has broader parameters under our state constitution than it does under the federal constitution. *State* v. *Oquendo*, 223 Conn. 635, 649–52, 613 A.2d 1300 (1992).

A threshold issue for this court is whether the defendant was "seized" when he was detained by the state police on November 29, 2003. As noted previously, Anderson activated the flashing emergency lights on his cruiser in order to stop the defendant's truck.

"[A] person [is defined] as seized under our state constitution when by means of physical force or a show of authority, his freedom of movement is restrained. . . . In determining whether a seizure has occurred, so as to invoke the protections of our state constitution . . . a court is to consider whether in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (Internal quotation marks omitted.) *State* v. *Donahue*, 251 Conn. 636, 642–43, 742 A.2d 775 (1999), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000).

On the basis of the evidence presented, the court finds that the defendant was detained by the state police sergeant for purposes of investigation. The court finds that the defendant's freedom of movement was involuntarily curtailed by a display of official authority and that the defendant would not have believed that he could leave until he was permitted to do so by Anderson. Accordingly, the court finds that the defendant was "seized" within the meaning of our state constitution.

Having found that the defendant had been seized, the court must further determine whether the detention was a constitutionally permissible one.

"Article first, §§ 7 and 9 of our state constitution permit a police officer in appropriate circumstances

and in an appropriate manner to detain an individual for investigative purposes even though there is no probable cause to make an arrest. . . . In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . A court reviewing the legality of a stop must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be delved therefrom. . . . These standards, which mirror those set forth by the United States Supreme Court in *Terry* v. *Ohio*, [392 U.S. 1, 20–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)], with regard to fourth amendment analysis, govern the legality of investigatory detentions under article first, §§ 7 and 9 of our state constitution." (Citations omitted; internal quotation marks omitted.) *State* v. *Donahue*, supra, 251 Conn. 643–44.

As noted, there is extensive precedent under both state and federal case law that the police may briefly detain an individual for investigative purposes if there is "reasonable and articulable suspicion" that the person stopped has engaged in, or is about to engage in, criminal activity. See *Terry* v. *Ohio*, supra, 392 U.S. 1; *State* v. *Donahue*, supra, 251 Conn. 643–44; *State* v. *Cofield*, 220 Conn. 38, 44, 595 A.2d 1349 (1991); *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990).

"In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Internal quotation marks omitted.) *State* v. *Cofield*, supra, 220 Conn. 45. "The purpose of an investigatory stop is to maintain the status quo for a brief period of time to allow the police to investigate the circumstances that give rise to the suspicion of criminal wrongdoing."

*Costello* v. *Kozlowski*, 47 Conn. App. 111, 115, 702 A.2d 1197 (1997).

In light of the foregoing, this court must examine the totality of the circumstances surrounding the actions of the police officers, and the information known by them, at about the time that the defendant was stopped.

Grayeb was dispatched to Burbank Road at 12:53 a.m. He received general descriptions of the suspect, his passengers and the motor vehicle that the suspect was driving. Grayeb radioed that information to the Troop C dispatcher within five or ten minutes of his arrival at the crime scene.

Anderson heard the general broadcast about the robbery on his cruiser's radio. Anderson was aware that the crime had occurred on Burbank Road and that the perpetrator was a white male who was operating a gold or similarly colored full-sized pickup truck.

Shortly after receiving this information, Anderson observed the defendant, who is Caucasian, driving a full-sized Dodge Dakota pickup truck near Burbank Road. The model of the truck driven by the defendant was consistent with the type of truck reportedly operated by the suspect. The defendant's vehicle was completely silver and not gold or tan with silver or white sides. Given the darkness, however, and the complainant's lack of certainty concerning the vehicle's color, the court finds that Anderson was justified in reasonably suspecting that the pickup truck driven by the defendant might have been the motor vehicle used in the commission of the robbery. "The police . . . are not required to confirm every description of the perpetrator that is broadcast over the radio. What must be taken into account [when determining the existence of a reasonable and articulable suspicion] is the strength of those points of comparison which do match up and whether the nature of the descriptive factors which

do not match is such that an error as to them is not improbable . . . ." (Internal quotation marks omitted.) *State* v. *DaEria*, 51 Conn. App. 149, 158, 721 A.2d 539 (1998).

The fact that the defendant, a white male, was observed driving such a truck shortly after the robbery, in an area proximate to the crime scene, provided further justification for Anderson's suspicion. "Proximity in time and place of the stop to the crime is highly significant in the determination of whether an investigatory detention is justified by reasonable and articulable suspicion." (Internal quotation marks omitted.) Id.

Additionally, Anderson testified credibly that when he began following the defendant, the defendant immediately turned onto another street. This caused Anderson to suspect that the defendant was trying to avoid him.

An officer's belief that a motorist is trying to avoid him, standing alone and without any other substantial indication that a crime is afoot, does not give rise to the type of reasonable and articulable suspicion that warrants an investigatory stop. That, however, is not the situation here. In this case, Anderson's suspicion that the defendant was attempting to avoid him was supplemented by his awareness that the defendant's vehicle was similar in description to the pickup truck that had been used several minutes earlier during the commission of a felony at a nearby location. Anderson also observed that the defendant, like the alleged robber, was a white male.

The court finds that, viewed collectively, the facts known by Anderson at the time gave rise to a reasonable and articulable suspicion that justified him to detain the defendant briefly for investigative purposes.[4]

---

[4] At the hearing, the defendant argued that the lack of passengers in his truck and the fact that his vehicle was silver, instead of gold or tan, alleviated the suspicion that his vehicle could have been the perpetrator's vehicle.

## III

## CONCLUSION

On the basis of the foregoing, the court finds from the totality of the circumstances that the seizure of the defendant was constitutionally permissible. Accordingly, the defendant's motions to suppress evidence and to dismiss are both hereby denied.

He also claimed that Anderson's decision not to engage in "felony stop" procedures when he initially stopped the defendant and approached the vehicle called into question the credibility of Anderson's testimony that he detained the defendant on the basis of the suspicion that the defendant might have been involved in the robbery. The court has carefully considered both of those arguments but does not conclude that either compels a finding different from the one being rendered herein.