## STATE OF CONNECTICUT *v.* MICHAEL K. CLARK
### (AC 28371)

Bishop, Gruendel and Beach, Js.

820

Argued February 15—officially released May 20, 2008

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Marc G. Ramia*, assistant state's attorney, for the appellant (state).

*Annacarina Del Mastro*, senior assistant public defender, for the appellee (defendant).

*Opinion*

BISHOP, J. The state appeals from the judgment of the trial court dismissing the information that charged the defendant, Michael K. Clark, with possession of drugs within 1500 feet of a school in violation of General Statutes § 21a-279 (d), sale of a controlled substance in violation of General Statutes § 21a-277 (b), illegal manufacture, distribution, sale, prescription or administration of a controlled substance within 1500 feet of a school in violation of General Statutes § 21a-278a (b) and operation of a drug factory in violation of General Statutes § 21a-277 (c). On appeal, the state claims that the court improperly granted the defendant's motion to suppress all evidence seized as a result of his arrest because (1) the police did not subject the defendant to an illegal "stop" that constituted a seizure in violation of the state and federal constitutions, and (2) the evidence seized was in plain view. We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On or about December 1, 2006, the defendant orally moved to suppress evidence that police found in his vehicle on the date of his arrest. At the suppression hearing, the state presented testimony from Detective Justen Kasperzyk and Officer Dennis O'Connell of the New Haven police department, both of whom were on duty on February 24, 2006. Kasperzyk testified as to the following facts. Sometime between 9 a.m. and noon, Kasperzyk received a telephone call

from a confidential informant from whom he had previously received reliable information on the basis of which search warrants had been issued and arrests made. The informant told Kasperzyk that the defendant was selling drugs in the Hill section of New Haven. The informant further told Kasperzyk that the defendant was driving a tan Chevy Cobalt with Pennsylvania license plates.[1] Kasperzyk knew the defendant from a prior arrest and because the defendant also had worked as an informant for another police officer.

When O'Connell arrived for duty between 3 and 4 p.m., Kasperzyk told him that they should go out in the Hill area and look for the Chevy Cobalt because he had received information that "this vehicle was selling marijuana." Kasperzyk, O'Connell and Officer Daniel Sacco went in an unmarked police car to the Hill area of New Haven.

At approximately 5 p.m., the officers came upon a vehicle and an individual matching the description provided by the informant. Kasperzyk recognized the defendant as the operator of the vehicle. They followed the vehicle for a short distance until the defendant stopped behind several cars at a red traffic signal. There was also a car behind the defendant. Kasperzyk testified that he pulled up alongside the defendant's car because "he felt it was safe enough, and he was tied with other cars where he couldn't run and we didn't have police cars to pull him over at that time. So, we pulled up next to him where he couldn't get out, and the two officers got out of the car and told him to stop the car."

O'Connell testified that when he approached the defendant's vehicle, he asked the defendant to roll down his window. There was also a front seat passenger in the car. Although he did not orally identify himself as

---

[1] Kasperzyk testified that the informant also gave him the license plate number, but he could not recall it at the time he testified.

a police officer, O'Connell and the other officers were wearing sweatshirts or jerseys that said "Police" on them, and their badges were hanging on chains around their necks. O'Connell testified that when the defendant rolled down his window, he smelled marijuana and also saw a small black bag in the rear of the vehicle containing a few "sandwich bags with a green plant like substance in it, kind of like rolled a little bit, rolled up." Following a field test confirming that the substance was marijuana, the defendant was arrested. When the police searched the defendant, he was found to be in possession of $612 in cash. Kasperzyk also found a large ziplock bag containing one pound of a green plant like substance in the trunk of the defendant's vehicle that also tested positive for marijuana.

After hearing the evidence and the arguments of the parties, the court rendered an oral decision granting the defendant's motion to suppress on December 5, 2006. The court determined that the officers' conduct constituted a seizure that was not based on a reasonable and articulable suspicion. Thereafter, on the state's motion, the court dismissed the charges because the state indicated that, without the suppressed evidence, it would be unable to proceed with the prosecution. The court granted the state permission to file this appeal.

"[O]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's [ruling] . . . ." (Internal quotation marks omitted.) *State* v. *Jones*, 281 Conn. 613, 654, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d

112 (2007). "Because a trial court's determination of the validity of a . . . search [or seizure] implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . However, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 43, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). With these principles in mind, we turn to the state's claims on appeal.

I

The state first claims that the police did not subject the defendant to an illegal "stop" that constituted a seizure in violation of the state and federal constitutions. The state contends that the court improperly found that the police action constituted a seizure because the stop was not effectuated by any show of authority or force on the part of the police but, rather, occurred because the defendant had stopped at a red signal in traffic and because a reasonable person in the defendant's position would have believed that he was free to leave with the flow of traffic. The state further contends that even if the officers' conduct constituted a seizure, the seizure was not unconstitutional because it was supported by reasonable and articulable suspicion. We are unpersuaded.

"When considering the validity of a . . . stop, our threshold inquiry is twofold. . . . First, we must determine at what point, if any, did the encounter between [the police officer] and the defendant constitute an investigatory stop or seizure. . . . Next, [i]f we conclude that there was such a seizure, we must then determine whether [the police officer] possessed a

reasonable and articulable suspicion at the time the seizure occurred." (Citation omitted; internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 503, 838 A.2d 981 (2004).

Because our Supreme Court has interpreted the Connecticut constitution as affording broader protection than its federal counterpart when determining whether an individual has been seized, we will analyze the seizure issue under the stricter state standard.[2] See *State* v. *Oquendo*, 223 Conn. 635, 652–53, 613 A.2d 1300 (1992). "We have . . . defined a person as seized under our state constitution when by means of physical force or a show of authority, his freedom of movement is restrained. . . . In determining the threshold question of whether there has been a seizure, we examine the effect of the police conduct at the time of the alleged seizure, applying an objective standard. Under our state constitution, a person is seized only if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. . . . Therefore, [w]hether there has been a seizure in an individual case is a question of fact." (Citation omitted; internal quotation marks omitted.) *State* v. *Santos*, supra, 267 Conn. 503–504.

In resolving the threshold issue of seizure, we are mindful that our analysis is dependent on the court's

---

[2] In contrast, "[a] person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement . . . through means intentionally applied . . . . Thus, an unintended person . . . [may be] the object of the detention, so long as the detention is willful and not merely the consequence of an unknowing act. . . . A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure so far as the Fourth Amendment is concerned." (Citations omitted; internal quotation marks omitted.) *Brendlin* v. *California*, 551 U.S. 249, 254, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007).

factual determinations. Here, the court found that the officers blocked the defendant's vehicle in a manner that was intended to, and had the effect of, restricting his freedom of movement. The court also found that the officers' actions in immediately exiting their vehicle and approaching the defendant's vehicle while asking him to roll down his window and wearing marked shirts and badges demonstrated their authority in such a manner that a reasonable person would not have believed that he was free to leave. Because the court's findings are supported by the testimony presented, its determination that a seizure had occurred was not clearly erroneous.

We next turn to the question of whether the seizure of the defendant was based on a reasonable and articulable suspicion. "Under the fourth amendment to the United States constitution and article first, [§ 7] . . . of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest." (Internal quotation marks omitted.) *State* v. *Thomas*, 98 Conn. App. 542, 548, 909 A.2d 969 (2006), cert. denied, 281 Conn. 910, 916 A.2d 53 (2007). An investigating officer may briefly stop a motorist if the officer has a reasonable and articulable suspicion that "criminal activity may be afoot . . . ." *Terry* v. *Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

"Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion." (Internal quotation marks omitted.) *State* v. *Wilkins*, 240 Conn.

489, 496, 692 A.2d 1233 (1997). Whether a reasonable and articulable suspicion exists depends on the totality of the circumstances. *State* v. *Nash*, 278 Conn. 620, 641, 899 A.2d 1 (2006). "The determination of whether a specific set of circumstances provides a police officer with a reasonable and articulable suspicion of criminal activity is a question of fact for the trial court and is subject to limited appellate review." (Internal quotation marks omitted.) *State* v. *Thomas*, supra, 98 Conn. App. 549.

"The determination of whether a reasonable and articulable suspicion exists rests on a two part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *Santos*, supra, 267 Conn. 504–505.

When a suspicion of criminal activity is based on a confidential informant's tip, "an examination of the informant's reliability (or veracity) and the basis of his or her knowledge should be regarded as highly relevant in determining whether, under the totality of the circumstances, probable cause existed." (Internal quotation marks omitted.) *State* v. *Orellana*, 89 Conn. App. 71, 81, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005).

Although the court found the informant reliable on the basis of Kasperzyk's prior dealings with him, the court found that there was no basis for the informant's knowledge.[3] "With regard to an informant's basis of knowledge, our Supreme Court has stated that [g]enerally, it may be said that the surest way to establish a

---

[3] The state contends that the court applied the wrong test in resolving this issue. This claim is, however, without merit. The court specifically noted the totality of circumstances test in its decision, and because the reliability and veracity of the tipster are significant factors in that test, the court was entitled to rely heavily on them.

basis of knowledge is by a showing that the informant is passing on what is to him first-hand information . . . [as] when a person indicates he has overheard the defendant planning or admitting criminal activity . . . ." (Internal quotation marks omitted.) Id., 82. When the basis for an informant's knowledge is not expressly made known to the police, a highly specific tip predicting future behavior can supply a significant indicia of reliability if significant aspects of the tip are independently corroborated by the police. *Alabama* v. *White*, 496 U.S. 325, 332, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). "The police . . . are not required to corroborate all of the information provided by a confidential informant. . . . Partial corroboration may suffice." (Citations omitted.) *State* v. *Leonard*, 31 Conn. App. 178, 187, 623 A.2d 1052, cert. granted on other grounds, 226 Conn. 912, 628 A.2d 985 (1993) (appeal withdrawn January 7, 1994). Corroboration of the physical description of a suspect, his car and the general section of town, although helpful to police in identifying a suspect, does not, however, corroborate the informant's knowledge of criminal activity. *Florida* v. *J. L.*, 529 U.S. 266, 272, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000).

Here, the court found: "[Kasperzyk], who received the phone call from the [informant] testified that the [informant] told him that, and I quote from his testimony, '[The defendant] was selling marijuana in the Hill section of New Haven, and he was driving a tan Chevy Cobalt with Pennsylvania plates.' These two bits of information were all that was given to [Kasperzyk]: one, [the defendant] was selling marijuana in the Hill and, two, what he was driving. There was no testimony as to how the confidential informant came across this information. There was no testimony that he or she observed the defendant selling any marijuana, and even if you assume that he or she did see the defendant selling marijuana, they gave no details as to what they

saw transpire. The evidence shows no basis at all for the confidential informant's knowledge. Did someone tell them? Did they—how did they know this? Knowing what the defendant is driving is hardly a basis for knowledge that he is involved in criminal activity."

As the court properly noted, the informant did not indicate that he or she had observed any illegal activity. There also was no other indication of firsthand knowledge on the part of the informant, such as overhearing the defendant planning or admitting to selling drugs, and the informant did not demonstrate any knowledge of the defendant's future behavior. In sum, the informant simply made the allegation to the officer without providing any information from which the officer could determine that the informant's information was reliable. When the officers saw the defendant several hours after the call from the informant, they did not witness any illegal activity. The only information the police were able to corroborate before stopping the defendant was the identifying information that was unrelated to the informant's knowledge of the defendant's illegal activity. On the basis of the totality of the circumstances, the court properly concluded that the seizure of the defendant was not based on a reasonable and articulable suspicion.

## II

The state also claims that even if the seizure of the defendant and the evidence was unconstitutional, the marijuana found in the backseat of the defendant's vehicle was in plain view and was, therefore, not a result of the illegality. The state did not raise this argument before the trial court, nor did the court conduct any analysis or make any findings in this regard. Thus, we decline to address this claim because the record is inadequate for its review and also because it is being

raised for the first time on appeal. See *Kelley* v. *Commissioner of Correction*, 90 Conn. App. 329, 335–36, 876 A.2d 600, cert. denied, 276 Conn. 909, 886 A.2d 423 (2005).

The judgment is affirmed.

In this opinion GRUENDEL, J., concurred.

BEACH, J., dissenting. I respectfully dissent. I agree with the majority that there was a *Terry*-type[1] seizure under our state constitution, and I agree that the introduction into evidence of the seized items is not justified by the plain view doctrine. I part paths only on the question of whether the police officers had a sufficiently reasonable and articulable suspicion to justify the *Terry*-type seizure.

I accept, as do the majority and apparently both parties, the factual findings made by the trial court. As to this issue, the court found that Detective Justen Kasperzyk received a telephone call from a confidential informant between 9 a.m. and noon on February 24, 2006. The informant had provided reliable information in the past, and search warrants and arrest warrants had been issued on information provided by the informant. The informant told Kasperzyk that the defendant, Michael K. Clark, was selling drugs in the Hill section of New Haven and that he was driving a tan Chevrolet Cobalt with Pennsylvania license plates. Kasperzyk knew the defendant because of a prior arrest and because the defendant had worked as an informant for another officer.

Later that day, Kasperzyk and two other officers drove to the Hill area to look for the vehicle. They located a tan Chevrolet Cobalt with Pennsylvania plates at approximately 5 p.m. in the Hill neighborhood.

[1] See *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Kasperzyk recognized the defendant as the operator of the automobile. Officers approached the car when it was stopped in traffic. The court found that there was a seizure at this point.

Though factual findings of a trial court are to be accorded great deference, the standard for our review of the legal conclusions of a trial court concerning whether a reasonable and articulable suspicion exists is plenary. *State* v. *Foote*, 85 Conn. App. 356, 363, 857 A.2d 406 (2004), cert. denied, 273 Conn. 937, 875 A.2d 43, 44 (2005). The test to be applied is whether, under the totality of the circumstances, the police had a particularized and objective basis for suspecting the particular person stopped of criminal activity. *State* v. *Cofield*, 220 Conn. 38, 45, 595 A.2d 1349 (1991). The reliability of the informer and the basis of the informer's knowledge are important considerations and are highly relevant to the determination of whether a reasonable and articulable suspicion exists. *Alabama* v. *White*, 496 U.S. 325, 328–29, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990); see also *State* v. *Leonard*, 31 Conn. App. 178, 186, 623 A.2d 1052, cert. granted on other grounds, 226 Conn. 912, 628 A.2d 985 (1993) (appeal withdrawn January 7, 1994). "[A] deficiency in one [factor, however] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability such as corroboration by the police. . . . The police, however, are not required to corroborate all of the information provided by a confidential informant. . . . Partial corroboration may suffice." (Citations omitted; internal quotation marks omitted.) *State* v. *Leonard*, supra, 186–87.

This case presents a close question. The police received information from an informant who had provided reliable information in the past. The court found him to be reliable. The fact that the informant was known and reliable sets this case apart from cases in which the informant was anonymous. Cf. *Florida* v. *J.*

*L.*, 529 U.S. 266, 272, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000). Tips from known, reliable informants require less verifying detail than tips from anonymous sources. See, e.g., *Adams* v. *Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972) (unverified tip from known informant sufficient to justify *Terry*-type stop). Details given by the informant describing the automobile with great particularity and some distinctiveness were corroborated by police observation. Although the police did not observe the defendant engage in any criminal behavior, the informant's tip predicted, if somewhat generally, the location of the car and, with particularity, the association of the defendant with the car. When the police were able to corroborate the details, they reasonably could infer that however the informant came by his information, the tip was reliable. Finally, the police had independent information regarding prior criminal activity by the defendant. When the facts are totaled, I believe that they support the conclusion that the police acted on the basis of a reasonable and articulable suspicion sufficient to justify the minimally intrusive initial stop that subsequently occurred. Although any one of these factors may not by itself constitute sufficient suspicion of illegal conduct, when taken together, they amount to a reasonable and articulable suspicion. See *State* v. *Leonard*, supra, 31 Conn. App. 178.[2] This court's review is plenary, and, accordingly, I would conclude that the trial court improperly determined that the seizure of the defendant was not based on a reasonable and articulable suspicion. I would reverse the judgment of the trial court and would remand the case with direction to deny the defendant's motion to suppress and for further proceedings according to law.

I respectfully dissent.

---

[2] The facts of this case closely parallel those found sufficient in *State* v. *Leonard*, supra, 31 Conn. App. 186–88, to support a stop pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).