# STATE OF CONNECTICUT *v.* MICHAEL K. CLARK
## (SC 18186)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and
McLachlan, Js.*

---

* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

1

Argued February 22—officially released June 15, 2010

*Bruce R. Lockwood*, senior assistant state's attorney, with whom were *Margaret Gaffney Radionovas*, senior assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *Marc G. Ramia*, assistant state's attorney, for the appellant (state).

*Annacarina Jacob*, senior assistant public defender, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The sole issue in this certified appeal is whether the Appellate Court correctly concluded that the trial court properly had granted the defendant's motion to suppress the evidence seized from his person and his vehicle on the day of his arrest on various narcotics offenses. The state appeals, following our grant of certification,[1] from the judgment of the Appellate Court, which affirmed the judgment of the trial court dismissing the information that charged the defendant, Michael K. Clark, with possession of narcotics within 1500 feet of a school in violation of General Statutes § 21a-279 (d), sale of a controlled substance in violation of General Statutes § 21a-277 (b), illegal manufacture, distribution, sale, prescription or administration of a controlled substance within 1500 feet of a school in violation of General Statutes § 21a-278a (b), and operation of a drug factory in violation of § 21a-277 (c). *State* v. *Clark*, 107 Conn. App. 819, 821, 947 A.2d 351 (2008). On appeal, the state claims that the Appellate Court, in a two to one decision, improperly affirmed the judgment of the trial court dismissing the charges against the defendant following its granting of the defendant's motion to suppress because the action of the police did not constitute a seizure and, in addition, even if the action did constitute a seizure, it was supported by a reasonable and articulable suspicion of criminal activity.[2] We now conclude that the Appellate

---

[1] We granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly affirm the trial court's ruling that the evidence seized from the defendant's vehicle and person should be suppressed as the fruit of an illegal seizure?" *State* v. *Clark*, 288 Conn. 916, 916–17, 954 A.2d 187 (2008).

[2] Judge Beach dissented from the majority opinion of the Appellate Court. *State* v. *Clark*, supra, 107 Conn. App. 830. He concluded that "[w]hen the police were able to corroborate the details, they reasonably could infer that however the informant came by his information, the tip was reliable. [In addition], the police had independent information regarding prior criminal activity by the defendant." Id., 832 (*Beach, J.*, dissenting). Accordingly, Judge Beach would have reversed the judgment of the trial court because there

Court's determination that the evidence was seized as part of an unconstitutional seizure was improper because, even if we were to assume that the police action did constitute a seizure, it was supported by reasonable and articulable suspicion. Accordingly, we reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following undisputed facts and procedural history. "On or about December 1, 2006, the defendant orally moved to suppress evidence that [the] police found in his vehicle on the date of his arrest. At the suppression hearing, the state presented testimony from Detective Justen Kasperzyk and Officer Dennis O'Connell of the New Haven police department, both of whom were on duty on February 24, 2006. Kasperzyk testified as to the following facts. Sometime between 9 a.m. and noon, Kasperzyk received a telephone call from a confidential informant from whom he had previously received reliable information on the basis of which search warrants had been issued and arrests made. The informant told Kasperzyk that the defendant was selling drugs in the Hill section of New Haven. The informant further told Kasperzyk that the defendant was driving a tan [Chevrolet] Cobalt with Pennsylvania license plates. Kasperzyk knew the defendant from a prior arrest and because the defendant also had worked as an informant for another police officer.

"When O'Connell arrived for duty between 3 and 4 p.m., Kasperzyk told him that they should go out in the Hill area and look for the [Chevrolet] Cobalt because he had received information that 'this vehicle was selling marijuana.' Kasperzyk, O'Connell and Officer Daniel Sacco went in an unmarked police car to the Hill area of New Haven.

---

was reasonable and articulable suspicion, and remanded the case to that court with direction to deny the defendant's motion to suppress and for further proceedings. Id.

"At approximately 5 p.m., the officers came upon a vehicle and an individual matching the description provided by the informant. Kasperzyk recognized the defendant as the operator of the vehicle. They followed the vehicle for a short distance until the defendant stopped behind several cars at a red traffic signal. There was also a car behind the defendant. Kasperzyk testified that he pulled up alongside the defendant's car because 'he felt it was safe enough, and he was tied with other cars where he couldn't run and we didn't have police cars to pull him over at that time. So, we pulled up next to him where he couldn't get out, and [Officers O'Connell and Sacco] got out of the car and told [the defendant] to stop the car.'

"O'Connell testified that when he approached the defendant's vehicle, he asked the defendant to roll down his window. There was also a front seat passenger in the car. Although he did not orally identify himself as a police officer, O'Connell and the other officers were wearing sweatshirts or jerseys that said 'Police' on them, and their badges were hanging on chains around their necks. O'Connell testified that when the defendant rolled down his window, he smelled marijuana and also saw a small black bag in the rear of the vehicle containing a few 'sandwich bags with a green [plant-like] substance in it, kind of like rolled a little bit, rolled up.' Following a field test confirming that the substance was marijuana, the defendant was arrested. When the police searched the defendant, he was found to be in possession of $612 in cash. Kasperzyk also found a large ziplock bag containing one pound of a green [plant-like] substance in the trunk of the defendant's vehicle that also tested positive for marijuana.

"After hearing the evidence and the arguments of the parties [at the suppression hearing], the [trial] court rendered an oral decision granting the defendant's motion to suppress on December 5, 2006. The [trial]

court determined that the officers' conduct constituted a seizure that was not based on a reasonable and articulable suspicion. Thereafter, on the state's motion, the [trial] court dismissed the charges because the state indicated that, without the suppressed evidence, it would be unable to proceed with the prosecution. The [trial] court granted the state permission to file [an appeal to the Appellate Court]." *State* v. *Clark*, supra, 107 Conn. App. 821–23.

On appeal to the Appellate Court, the state claimed that "the [trial] court improperly granted the defendant's motion to suppress all evidence seized as a result of his arrest because . . . the police did not subject the defendant to an illegal 'stop' that constituted a seizure in violation of the state and federal constitutions . . . ."[3] Id., 821. The Appellate Court majority rejected the state's claims and agreed with the trial court's determination that a reasonable person would not have believed that he was free to leave based on the officers' actions in blocking the defendant's vehicle, exiting their vehicle, and, while wearing marked shirts and police badges, approaching the defendant's vehicle and asking him to roll down his window. Id., 826. The Appellate Court further concluded that, "[o]n the basis of the totality of the circumstances, the [trial] court properly concluded that the seizure of the defendant was not based on a reasonable and articulable suspicion." Id., 829. In support of its conclusion, the Appellate Court pointed to the fact that the informant had not observed any illegal activity, or demonstrated any other firsthand knowledge of the defendant's alleged illegal behavior and that the officers themselves had not witnessed any illegal

---

[3] On appeal to the Appellate Court, the state also claimed that the trial court improperly suppressed the evidence seized because it was in plain view. The Appellate Court did not address this claim because the state had not raised it before the trial court. *State* v. *Clark*, supra, 107 Conn. App. 829–30.

activity, but had been able to corroborate only "identifying information that was unrelated to the informant's knowledge of the defendant's illegal activity." Id. Accordingly, the Appellate Court concluded that the trial court properly had granted the defendant's motion to suppress the evidence and affirmed the trial court's judgment of dismissal. Id., 830. This certified appeal followed.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . *State* v. *Blackman*, 246 Conn. 547, 553, 716 A.2d 101 (1998). We undertake a more probing factual review when a constitutional question hangs in the balance. See *State* v. *Damon*, 214 Conn. 146, 154, 570 A.2d 700 ([w]here a constitutional issue turns [on] a factual finding . . . our usual deference . . . is qualified by the necessity for a scrupulous examination of the record to ascertain whether such a finding is supported by substantial evidence . . .), cert. denied, 498 U.S. 819, 111 S. Ct. 65, 112 L. Ed. 2d 40 (1990)." (Internal quotation marks omitted.) *State* v. *Burroughs*, 288 Conn. 836, 843, 955 A.2d 43 (2008).

"Ordinarily, [w]hen considering the validity of a . . . stop, our threshold inquiry is twofold. . . . First, we must determine at what point, if any, did the encounter between [the police officer] and the defendant constitute an investigatory stop or seizure. . . . Next, [i]f we conclude that there was such a seizure, we must then determine whether [the police officer] possessed a reasonable and articulable suspicion at the time the seizure

occurred." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 516, 903 A.2d 169 (2006).

"We have . . . defined a person as seized under our state constitution when by means of physical force or a show of authority, his freedom of movement is restrained. . . . In determining the threshold question of whether there has been a seizure, we examine the effect of the police conduct at the time of the alleged seizure, applying an objective standard. Under our state constitution, a person is seized only if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. . . . Therefore, [w]hether there has been a seizure in an individual case is a question of fact." (Citation omitted; internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 503–504, 838 A.2d 981 (2004).

In the present case, the trial court found that the officers had blocked the defendant's vehicle in a manner that restricted his freedom of movement, exited their vehicle and approached the defendant's vehicle while asking him to roll down his window. The trial court further determined that the officers were wearing "marked shirts and [their] badges were showing . . . ." The trial court found that a reasonable person in this situation would have believed that he was not free to leave, and therefore determined that a seizure had occurred. For purposes of our analysis, we will assume that the defendant was seized for the purpose of an investigative detention when the officers blocked and then approached his vehicle, and that his rights under the fourth and fourteenth amendments[4] to the United

---

[4] The fourth amendment to the United States constitution, made applicable to the states through the due process clause of the fourteenth amendment, provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." See *Wolf* v. *Colorado*, 338 U.S. 25, 28, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949).

States constitution were implicated. The dispositive question in this appeal therefore is whether the police officers had sufficient justification to warrant the detention of the defendant.

"The determination of whether a reasonable and articulable suspicion exists rests on a two part analysis: '(1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct.' *State* v. *Wilkins*, 240 Conn. 489, 496, 692 A.2d 1233 (1997)." *State* v. *Santos*, supra, 267 Conn. 504–505.

"Under the fourth amendment to the United States [c]onstitution and article first, §§ 7 and 9, of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest. *Alabama* v. *White*, 496 U.S. 325, 330–31, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990); *Terry* v. *Ohio*, [392 U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)]; *State* v. *Mitchell*, 204 Conn. 187, 194–95, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . .

"[I]n justifying [a] particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion. *Terry* v. *Ohio*, supra, 392 U.S. 21 . . . . In determining whether a detention is justified in a given case, a court

must consider if, relying on the whole picture, the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. When reviewing the legality of a stop, a court must examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. . . . A recognized function of a constitutionally permissible stop is to maintain the status quo for a brief period of time to enable the police to investigate a suspected crime. . . . *State* v. *Lipscomb*, 258 Conn. 68, 75–76, 779 A.2d 88 (2001); see also *Adams* v. *Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972) ([a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time).

"In addition, [e]ffective crime prevention and detection . . . [underlie] the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. *Terry* v. *Ohio*, supra, 392 U.S. 22. Therefore, [a]n investigative stop can be appropriate even where the police have not observed a violation because a reasonable and articulable suspicion can arise from conduct that alone is not criminal. . . . In evaluating the validity of such a stop, courts must consider whether, in light of the totality of the circumstances, the police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . *State* v. *Lipscomb*, supra, 258 Conn. 76." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 149–50, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

"When, as in this case, an officer's decision to detain a suspect briefly is based on information received from an informant, the task of the reviewing court is akin to a probable cause determination. In the probable cause context, we have recently departed from the 'two-pronged test' of *Aguilar* v. *Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), in favor of the 'totality of the circumstances' approach of *Illinois* v. *Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). *State* v. *Barton*, 219 Conn. 529, [544–45] 594 A.2d 917 (1991). Just as we made clear in *Barton* that the informant's 'veracity,' 'reliability,' and 'basis of knowledge' remain 'highly relevant'; id., 539–40; '[t]hese factors are also relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard.' *Alabama* v. *White*, supra, [496 U.S.] 328–29." *State* v. *Cofield*, 220 Conn. 38, 45–46, 595 A.2d 1349 (1991). This court has "consistently held that an informant's record of providing information that led to arrests and seizures of contraband is sufficient to establish the reliability of the informant." *State* v. *Smith*, 257 Conn. 216, 224, 777 A.2d 182 (2001). "[A] deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Illinois* v. *Gates*, supra, 233. The police are not required, however, to corroborate all of the information provided by a confidential informant. See id., 246; *State* v. *Cofield*, supra, 47. Partial corroboration may suffice. See *State* v. *Cofield*, supra, 47–48.

On appeal, the state asserts that the Appellate Court improperly applied the totality of the circumstances test in the present case. More specifically, the state contends that the Appellate Court improperly affirmed

the trial court's conclusion that, although the informant was reliable, the police officers lacked a reasonable and articulable suspicion to seize the defendant when they did so because they did not know the basis for the informant's knowledge. The state further claims that, under the totality of the circumstances test, the police officers had reasonable and articulable suspicion to seize the defendant because the informant was reliable and had provided a detailed and predictive tip, which the officers were able to corroborate in part. We agree with the state.

In the present case, the police had received information from a known confidential informant. This informant had provided reliable information to Officer Kasperzyk in the past, which had led to the issuance of search warrants and the making of arrests. Indeed, the trial court found that the informant was reliable and his veracity had been demonstrated through previous contacts with the police. Based on the fact that the informant was known to the police officers, the tip in the present case carried a greater indicia of reliability than one from an anonymous informant and therefore required less verification. See, e.g., *Adams* v. *Williams*, 407 U.S. 143, 146–47, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972) ("The informant was known to [the police officer] personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. . . . [Accordingly, the informant's unverified tip] carried enough indicia of reliability to justify the officer's forcible stop of [the defendant]." [Citations omitted.]).

The confidential informant in the present case notified the police officers that the defendant was selling drugs in the Hill section of New Haven that day. The informant further indicated that the defendant would be driving a tan Chevrolet Cobalt with Pennsylvania license plates. While on patrol later that same day, the

police officers, including Kasperzyk, who was familiar with the defendant from a prior arrest and the defendant's prior work as an informant for another police officer, saw the defendant driving a tan Chevrolet Cobalt with Pennsylvania license plates in the Hill section of New Haven. The police officers therefore corroborated a significant number of the facts reported to them by the informant. On the basis of this corroboration and the officers' prior experience with the informant, we conclude that it was reasonable for the officers to infer that the confidential informant's tip was reliable and that such a tip provided them with a reasonable and articulable suspicion to stop the defendant's vehicle. See, e.g., *Alabama* v. *White*, supra, 496 U.S. 332 ("the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller").

The defendant and the Appellate Court rely on the fact that the tip did not include the basis for the informant's knowledge as support for the trial court's conclusion that the officers did not have a reasonable and articulable suspicion to stop the defendant. We disagree. In addressing the basis of an informant's knowledge in the probable cause context, the United States Supreme Court has clarified that, "[t]here are persuasive arguments against according [the reliability and basis of knowledge of the informant] such independent status. Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. . . . If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his

failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. . . . Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary." (Citations omitted.) *Illinois* v. *Gates*, supra, 462 U.S. 233–34. In the present case, the trial court found that the informant was reliable, a factual finding that the defendant does not challenge on appeal. The trial court further found, however, that the tip was lacking because it did not provide the basis for the informant's knowledge of the defendant's criminal activity. We conclude, consistent with *Illinois* v. *Gates*, supra, 233, that when, as here, the police are familiar with the informant and his credibility has been established, and the police are able to corroborate several aspects of the tip by personal observation, the fact that the tip did not state the informant's basis of knowledge does not preclude the officers from having a reasonable and articulable suspicion of criminal activity.

The defendant also claims, and the Appellate Court agreed, that the officers did not have a reasonable and articulable suspicion of criminal activity in the present case because the police officers were able to corroborate only "identifying information that was unrelated to the informant's knowledge of the defendant's illegal activity" prior to stopping the defendant. *State* v. *Clark*, supra, 107 Conn. App. 829. We disagree. "In cases in which a police stop is based on an informant's tip, corroboration and reliability are important factors in the totality of the circumstances analysis." (Internal quotation marks omitted.) *State* v. *Jensen*, 109 Conn. App. 617, 624, 952 A.2d 95 (2008). As the Second Circuit Court of Appeals has concluded: "[I]nformants do not

all fall into neat categories of known or anonymous. Instead, it is useful to think of known reliability and corroboration as a sliding scale. Where the informant is known from past practice to be reliable . . . no corroboration will be required to support reasonable suspicion. Where the informant is completely anonymous . . . a significant amount of corroboration will be required. However, when the informant is only partially known (i.e., [the informant's] identity and reliability are not verified, but neither is [the informant] completely anonymous), a lesser degree of corroboration may be sufficient to establish reasonable suspicion." *United States* v. *Elmore*, 482 F.3d 172, 181 (2d Cir. 2007). In the present case, the informant was known by Kasperzyk and had provided reliable information on numerous occasions in the past regarding criminal activity. The police officers' corroboration of the defendant's presence in the Hill section of New Haven while driving a tan Chevrolet Cobalt with Pennsylvania license plates therefore was sufficient to provide a reasonable and articulable suspicion of criminal activity warranting the investigative stop. Accordingly, we conclude that the Appellate Court improperly affirmed the trial court's judgment of dismissal based upon that court's improper granting of the defendant's motion to suppress.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court with direction to deny the defendant's motion to suppress and for further proceedings according to law.

In this opinion the other justices concurred.