******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BEAR, J., dissenting. I respectfully dissent from the majority opinion because the trial court properly concluded that on October 20, 2010, the police had a reasonable and articulable suspicion[1] that the defendant was engaged in criminal activity, specifically the delivery of marijuana to an apartment on the third floor of 33 Thorniley Street, New Britain, which provided the police with the authority to conduct an investigatory stop.[2]

On April 29, 2011, the defendant filed a motion to suppress the marijuana evidence on the ground that it was the fruit of an illegal search and seizure.[3] The court held a hearing on July 19, 2012, on the motion. On August 23, 2012, it rendered its decision denying the defendant's motion to suppress the marijuana evidence.

After reviewing the evidence produced at the hearing, the court found that the police possessed a reasonable and articulable suspicion that the defendant was engaging or about to engage in criminal activity when he drove into the driveway at 33 Thorniley Street. The reasonable basis for their suspicion was described by the court as follows: the police had reliable information from three sources that the defendant was engaged in the ongoing sale of significant quantities of marijuana; they had information that 33 Thorniley Street was an address where large amounts of marijuana and cash were stored, and they had observed the defendant, earlier in October, 2010, drive to 33 Thorniley Street, park in the driveway, and enter the building for five minutes. When, on October 20, 2010, the police observed the defendant leave his home with a weighted white bag and travel to 33 Thorniley Street, the court found that the police had a particularized and objective basis for suspecting the defendant of criminal activity, specifically the delivery of marijuana. On the basis of the facts that it found, the court determined that the police, on October 20, 2010, had an appropriate basis to stop the defendant, by blocking his vehicle, after he entered the driveway at 33 Thorniley Street. The court also found that the police lawfully seized the marijuana found in the defendant's vehicle when it came into plain view before any search of the vehicle.[4]

The court rejected the defendant's claim that the actions of the police in blocking the defendant's vehicle and ordering him to step out of the vehicle constituted an arrest instead of an investigatory stop, and that the arrest was invalid because it lacked probable cause. The court also rejected the defendant's claim that the information provided by the informants was unreliable, and the court found that much of the informants' information was corroborated by the police. The court determined that based on the totality of the circumstances it

was reasonable for the police to rely on the information from the informants.

"[O]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . .

"On appeal, [t]he determination of whether reasonable and articulable suspicion exists rests on a two part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct. . . .

"An investigating officer may briefly stop a motorist if the officer has a reasonable and articulable suspicion that criminal activity may be afoot. . . . Similarly, [u]nder the fourth amendment to the United States constitution . . . a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. . . . [I]n justifying [a] particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . Because a reasonable and articulable suspicion is an objective standard, we focus not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . A recognized function of a constitutionally permissible stop is to maintain the status quo for a brief period of time to enable the police to investigate a suspected crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Arokium*, 143 Conn. App. 419, 427–28, 71 A.3d 569, cert. denied, 310 Conn. 904, 75 A.3d 31 (2013).

In *Arokium*, the defendant was stopped by the police after he left a hotel room from which cocaine had been sold. We described the facts supporting the officers' reasonable and articulable suspicion for the investigatory stop as follows: "As to the court's determination that a reasonable and articulable suspicion existed that the defendant was then engaged in criminal activity, the defendant claims that 'the objective facts known to Officer Broems at the moment of the stop were insufficient to establish reasonable and articulable suspicion' in the absence of proper corroboration. We disagree. The court based its finding of a reasonable and articulable suspicion on the reliability of the confidential infor-

mant and the observations of the police officers. The informant notified the police that a man was selling cocaine from room 273 at the hotel. The informant was known by the police and had provided reliable information in the past regarding criminal activity. See *State* v. *Clark*, [297 Conn. 1, 14–15, 997 A.2d 461 (2010)] (where informant is known from past practice to be reliable, no corroboration will be *required* to support reasonable suspicion). The officers conducted a controlled purchase in which the informant obtained cocaine from someone in room 273. The police officers confirmed that a man named Charles had been renting that room for an extended period of time. Armed with this information, Broems observed two people visit room 273, whose behavior reasonably suggested that they were engaging in drug trafficking activity. Both men were admitted into the room by someone else inside and departed shortly thereafter, carrying plastic bags. One such person was found in possession of $29,000 in cash in a shoe box shortly after leaving the room. The defendant, who matched the informant's description of Charlie, was subsequently seen leaving that very room with a plastic bag. On the basis of the officers' observations and their prior relationship with the informant, we conclude that it was reasonable for the officers to infer that the informant's tip was reliable and that such tip provided them with a reasonable and articulable suspicion to believe that the defendant was then engaging in criminal activity. The trial court's legal conclusion that such a reasonable and articulable suspicion existed at the time of the stop is legally and logically correct and supported by the facts." (Emphasis in original.) *State* v. *Arokium*, supra, 143 Conn. App. 429–30.

As in the present case, *Arokium* also involved reliable informant information, police confirmation of some of that information, the observations of police officers, the police blocking a vehicle, the defendant's use of a plastic shopping bag to carry contraband, and the discovery of that contraband in plain sight: "While waiting for the issuance of a search warrant [for the hotel room], Broems observed another black male exit room 273 whom he had not seen enter. This man, later identified as the defendant, was carrying a plastic shopping bag. Broems exited his vehicle and followed the defendant on foot to determine whether he matched the confidential informant's description of Charlie. At that moment, Broems notified [Officer] Byxbee, who had parked his police cruiser on a nearby side street, that he was pursuing a suspect near the front of the hotel. Standing about two feet from the defendant, Broems determined that he matched the informant's description of Charlie. Broems then told Byxbee: '[T]his is Charlie. This is the person we [are] looking for.' Shortly thereafter, the defendant entered a taxicab (cab). As the Cabdriver was beginning to drive away, Broems quickly

alerted Byxbee and requested that he enter the hotel parking lot and cut off the cab to prevent the defendant from leaving. Attempting to stall the defendant's departure, Broems approached the cabdriver and stated that he was in need of a cab. Moments later, Byxbee entered the parking lot and parked his cruiser directly in front of the cab. Broems then pulled out and displayed his badge and ordered the defendant to get out of the cab. Five to thirty seconds then passed, during which the defendant neither moved nor spoke. Believing that the defendant might have been armed, Broems opened the rear passenger door of the cab and 'ripped [the defendant] out of the car, and threw him on the ground, and handcuffed him . . . .' While securing the defendant, Broems saw that the bag that the defendant had been holding had fallen to the ground, partially exposing some of its contents to view. He noted, in particular, that several manila envelopes had spilled out of the defendant's bag, and that a clear plastic bag containing a white powder substance he suspected of being powder cocaine had fallen out of one of the manila envelopes. Also lying on the ground in plain view, Broems saw several small ziplock bags imprinted with apples, which he believed to be drug packaging material." Id., 424–25.

Even if *Arokium* is distinguishable in some respects, as the majority has set forth, and even if the evidence there of sale and of criminal activity was stronger than that in this case, it does not mean that there was not a valid basis for the reasonable and articulable suspicion by the police found by the court in this case. Federal constitutional law governs whether the police had a reasonable and articulable suspicion when they stopped the defendant. See *Navarette* v. *California*, U.S. , 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014);[5] see also *United States* v. *Arvizu*, 534 U.S. 266, 273–74, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002); and footnote 1 of this opinion. We are bound in this appeal by the court's unchallenged findings. Those findings reasonably support the court's determination that the police, on October 20, 2010, had a reasonable and articulable suspicion that the defendant was engaged in criminal activity at 33 Thorniley Street, specifically the delivery of marijuana,[6] which provided the police with the authority to conduct an investigatory stop, and to arrest the defendant after lawfully seizing the marijuana found in the defendant's vehicle when it came into plain view before any search of the vehicle had been conducted. After review of the facts found by the trial court, I agree with the trial court's legal conclusion that such a reasonable and articulable suspicion existed at the time of the stop. Accordingly, I would conclude that the trial court properly denied the motion to suppress.

Therefore, I respectfully dissent.

[1] "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Terry* v. *Ohio*, 392 U.S. 1, 9 [88 S. Ct. 1868, 20 L. Ed. 2d 889] (1968); *United States* v. *Cortez*,

449 U.S. 411, 417 [101 S. Ct. 690, 66 L. Ed. 2d 621] (1981). Because the balance between the public interest and the individual's right to personal security, *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 878 [95 S. Ct. 2574, 45 L. Ed. 2d 607] (1975), tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot, *United States* v. *Sokolow*, 490 U.S. 1, 7 [109 S. Ct. 1581, 104 L. Ed. 2d 1] (1989) (quoting *Terry* [v. *Ohio*, supra, 30; see also *United States* v.] *Cortez*, [supra] 417 ([a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity).

"When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. See, e.g., [*United States* v. *Cortez*, supra, 449 U.S. 417–18]. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. Id., [418; see] also *Ornelas* v. *United States*, 517 U.S. 690, 699 [116 S. Ct. 1657, 134 L. Ed. 2d 911] (1996) (reviewing court must give due weight to factual inferences drawn by resident judges and local law enforcement officers). Although an officer's reliance on a mere hunch is insufficient to justify a stop, *Terry* [v. *Ohio*, supra, 392 U.S.] 27, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard, [*United States* v.] *Sokolow*, supra, [490 U.S.] 7." (Internal quotation marks omitted.) *United States* v. *Arvizu*, 534 U.S. 266, 273–74, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002).

Additionally, "[a] determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct. See *Illinois* v. *Wardlow*, 528 U.S. 119, 125 [120 S. Ct. 673, 145 L. Ed. 2d 570] (2000) (that flight from police is not necessarily indicative of ongoing criminal activity does not establish Fourth Amendment violation)." *United States* v. *Arvizu*, supra, 534 U.S. 277.

[2] The majority opinion generally sets forth the facts found by the trial court, none of which the defendant challenges as clearly erroneous. I will refer to those facts as necessary in this opinion.

[3] The defendant's specific allegations were: "1. That the suppression of evidence in this matter is required by the Fourth Amendment of the United States Constitution and Article First, sections seven and nine of the Connecticut Constitution; 2. That the defendant has been aggrieved by an arbitrary and illegal detention and intrusion by the authorities of the New Britain Police Department ('authorities'), pursuant to the Fourth Amendment of the United States Constitution and Article First, section seven and nine of the Connecticut Constitution. Such non-consensual, un-resisted detention amounted to an illegal seizure of the defendant and his vehicle; 3. That the authorities seized the defendant's person and vehicle without probable cause for arrest and without a reasonable and articulable suspicion of criminal activity on the part of the defendant; 4. That the defendant has been aggrieved by an illegal search of his person and of his vehicle during a time period within which he was being unlawfully detained by authorities; 5. That the evidence sought to be suppressed is causally related to the aforementioned illegal intrusion, in that such evidence was obtained by the authorities during said illegal seizure of the defendant's person; 6. That the defendant has been aggrieved by an illegal arrest, which arrest was instituted following the acquisition of the aforementioned illegally obtained evidence by the authorities; 7. That the acquired additional evidence incident to such arrest, which evidence represents the fruit of an illegal seizure and search; 8. That there exists no intervening acts which form a part of the facts of this matter which are sufficient to purge the evidence sought to be suppressed of illegality."

[4] The court's statement of the issue before it and its findings were as follows: "The contested issue is whether the police possessed a reasonable and articulable suspicion that the defendant was engaging in or about to engage in criminal activity when he pulled into the driveway at 33 Thorniley Street. I find that they did.

"First, the police had reliable information from three different sources that the defendant was engaged in the ongoing sale of significant quantities of marijuana. On March 23, 2010, Pedro Ayala told the police that the defendant supplied him with marijuana. Ayala also told the police that he had purchased $4000 worth of marijuana from the defendant on March 10,

2010. This information was corroborated by the police as they had stopped the defendant on March 10, 2010 and found $4000 in cash on him.

"In addition, on September 29, 2010, Eric Cedeno told the New Britain police that he regularly buys marijuana in quantities of one to two pounds from the defendant. Cedeno provided identifying information regarding the defendant, such as his age, race and the vehicles he drove, which was corroborated by the police. Finally, on or about October 13, 2010, Adrian Arocho, a confidential informant for the New Britain police department who had previously provided reliable information to them that led to multiple arrests and convictions, told the police that he was familiar with the defendant and that the defendant sells marijuana. The police unsuccessfully attempted to make a controlled purchase of marijuana from the defendant using Arocho. But during a telephone conversation with Arocha, overheard by Officer Lopa, the defendant admitted that he had recently supplied marijuana to Cedeno.

"Second, the police had information that 33 Thorniley Street was an address where large amounts of marijuana and cash were stored. On October 7, 2010, Leonardo Soares told the New Britain police that he had purchased marijuana at 33 Thorniley Street in New Britain and that on several occasions he had witnessed several pounds of marijuana and large amounts of cash in the third floor apartment. The police had also observed the defendant, in October 2010, drive to 33 Thorniley Street, park in the driveway, and enter the building for five minutes; [these were] actions [that] the police believed to be consistent with drug activity.

"Armed with this information, when the police observed the defendant leave his residence with a 'weighted' white bag and travel in his vehicle to 33 Thorniley Street on October 20, 2010, they had a particularized and objective basis for suspecting the defendant of criminal activity; specifically the delivery of marijuana to 33 Thorniley Street. Accordingly, the police had an appropriate basis to stop the defendant, by blocking his vehicle, after he entered the driveway of 33 Thorniley Street and investigate further.

"The New Britain police lawfully seized the large quantity of marijuana found in the defendant's vehicle when it came into plain view before any search of the vehicle. Officer Lopa observed the marijuana in a zip lock bag in the rear of the defendant's vehicle when he looked through the vehicle's open front door after the defendant exited. Police officers are entitled to seize evidence revealed in 'plain view' during the course of a lawful '*Terry* stop.' *United States* v. *Hensley*, 469 U.S. 221, 235 [105 S. Ct. 675, 83 L. Ed. 2d 604] (1985)."

With respect to the weighted white Walmart bag, and the defendant's claim that it was not suspicious, the state commented in its brief that "[b]ased on the totality of the circumstances under which the October 20 stop was effectuated, which included information that the defendant was an active marijuana wholesaler who dealt in pound quantities of product, the police had reason to suspect that the Walmart bag was visibly weighted with a pound or more of marijuana . . . ." The police observed the defendant leave his home with the weighted Walmart bag, and place it in his vehicle.

[5] In *Navarette* v. *California*, supra, 134 S. Ct. 1687, the Supreme Court explained: "The Fourth Amendment permits brief investigative stops—such as the traffic stop in this case—when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' *United States* v. *Cortez*, 449 U.S. 411, 417–418 [101 S. Ct. 690, 66 L. Ed. 2d 621] (1981); see also *Terry* v. *Ohio*, [supra, 392 U.S. 21–22]. The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.' *Alabama* v. *White*, 496 U.S. 325, 330 [110 S. Ct. 2412, 110 L. Ed. 2d 301] (1990). The standard takes into account 'the totality of the circumstances—the whole picture.' [*United States* v.] *Cortez*, supra, 417. Although a mere 'hunch' does not create reasonable suspicion, *Terry* [v. *Ohio*] supra, 27, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause, *United States* v. *Sokolow*, [supra, 490 U.S. 7]."

[6] In support of the court's determination of the existence of a reasonable and articulable suspicion by the police, the state has argued in its appellate brief, inter alia, that "the police possessed a reasonable suspicion that, as of October 20, the defendant was an active seller of marijuana. His October 13 admission to resupplying Cedeno with marijuana, and the common knowledge that selling illegal drugs is a regenerating activity; (internal quotation marks omitted) *State* v. *Johnson*, 219 Conn. 557, 567 [594 A.2d 933] (1991)

(and the cases cited therein); alone supported the inference that the defendant was actively engaged in selling marijuana one week later. The police, in any event, had the additional information relating to March 10, which supported the inference that the defendant had, in fact, been in the marijuana selling business for at least an extended period of months."

———————————————————