******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MICHAEL EDMONDS
(AC 35451)

Gruendel, Alvord and West, Js.

*Argued April 17—officially released July 29, 2014*

(Appeal from Superior Court, judicial district of Fairfield, Rodriguez, J. [motion to suppress]; Arnold, J. [judgment].)

*Nicole Donzello*, senior assistant public defender, with whom was *Bradford Buchta*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Marc R. Durso*, assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The issue in this appeal is whether the trial court properly denied the defendant's motion to suppress narcotics evidence obtained by the police pursuant to a patdown search for weapons. The defendant, Michael Edmonds, appeals from the judgment of conviction rendered by the trial court following a conditional plea of nolo contendere to one count of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a), and one count of failure to appear in the first degree in violation of General Statutes § 53a-172.[1] The issue in this appeal is a two-tiered dispute. First, the parties disagree as to the moment at which the defendant was seized. The defendant contends that he was seized either when the police approached him in a restaurant parking lot, or when a police officer commanded him to stop. The state contends that the defendant was seized at a later point in time, when the police conducted a patdown search for weapons. Second, the parties dispute whether, at the moment of seizure, the police had a reasonable and articulable suspicion of criminal activity. The defendant claims that the police did not have a reasonable and articulable suspicion of criminal activity when he was seized, and therefore, the narcotics discovered pursuant to a patdown search were obtained in violation of his rights under article first, §§ 7 and 9, of the constitution of Connecticut, and the fourth amendment to the United States constitution. We disagree with the defendant with respect to both tiers of the dispute, and conclude that the defendant was seized when the police conducted a patdown search, at which time there was a reasonable and articulable suspicion of criminal activity. We thus affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. In the original information, the state charged the defendant with possession of narcotics and possession of narcotics with intent to sell. The defendant pleaded not guilty to both charges and elected to have a jury trial. On the day of trial, the defendant failed to appear and was rearrested pursuant to a court order. Thereafter, the defendant filed a motion to suppress the narcotics seized by the police pursuant to a patdown search for weapons. The court, *Rodriguez, J.*, held a hearing on the defendant's motion to suppress on February 20, 2013.

In denying the defendant's motion to suppress, the court set forth the following facts in an oral decision. "On January 28, 2011, at approximately 7 p.m. while on patrol in Bridgeport on Madison Avenue travelling northbound in a marked car and in uniform, Officers Elson Morales and Joseph Lawlor, the operator, observed [the defendant] standing alone behind a Subway Sandwich eatery in the shadow of the parking lot. The business is located on Madison Avenue near Capitol

Avenue in Bridgeport and is considered a high crime area by law enforcement where violent crimes are commonplace. Officer Morales knew of prior commercial robberies in the area and involving this particular eatery.

"It was dark outside and the two officers were in radio contact with their supervisor, Sergeant [Ronald] Mercado. The police were anticipating the presence of visiting . . . teenagers, from other areas due to a scheduled basketball game that evening at the nearby Central High School. The two officers informed Sergeant Mercado by radio of the presence of the defendant whom they saw from their police cruiser as they approached a red light.

"The two officers and Sergeant Mercado entered the parking lot at the same time and through the only two entrances into the eatery's parking lot. One entrance is from Capitol Avenue and the other is from Madison Avenue. As soon as the two officers arrived and as the defendant started to immediately walk away from the officers, he was observed by Officer Morales and Officer Lawlor to engage in movements around his waistband as he walked.

"While the police exited their vehicles and approached the defendant, he spontaneously yelled out 'I didn't rob anyone' and he kept saying that he was embarrassed. At this point, the police conducted a patdown of the defendant for their safety and found what later was determined to be packaged narcotics which [fell] from the defendant's waistband area during the patdown for weapons."

Following an evidentiary hearing, the court denied the defendant's motion to suppress. On the basis of the facts previously set forth, the court concluded that the defendant's presence in the parking lot of a Subway restaurant that previously had been robbed, and which was located in a high crime area, in addition to his "actions and utterances in response to the police presence . . . did create a reasonable and articulable suspicion that warranted a patdown search of the defendant for the safety of the officers." The court thus found that "the officer search of [the defendant] was based on valid justifiable reasons, which were created by the defendant himself. Accordingly, the defendant's motion to suppress is denied."

Subsequent to the court's denial of the defendant's motion to suppress, the state filed a substitute information charging the defendant with one count of possession of narcotics with intent to sell and one count of failure to appear. The defendant entered a conditional plea of nolo contendere to both charges. The court, *Arnold, J.*, accepted the defendant's plea and sentenced him to ten years incarceration suspended after four years served with three years probation on the count

of possession of narcotics with intent to sell, and to four years incarceration on the count of failure to appear. The court further ordered that the sentences run concurrently for a total effective sentence of ten years incarceration suspended after four years served with three years probation. This appeal followed.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . We undertake a more probing factual review when a constitutional question hangs in the balance. . . . In the present case, in which we are required to determine whether the defendant was seized by the police, we are presented with a mixed question of law and fact that requires our independent review." (Citations omitted; internal quotation marks omitted.) *State* v. *Burroughs*, 288 Conn. 836, 843–44, 955 A.2d 43 (2008).

I

We must first determine at what point the defendant was seized. The defendant claims that he was seized at two alternative points in time. First, he claims that he was seized when the police exited their vehicles and approached him in the Subway parking lot. Second, and in the alternative, he claims that he was seized when Mercado "exited his vehicle and verbally commanded [him] to stop." The state rejects both of the defendant's claims as to the moment of seizure. It argues, as a threshold matter, that the defendant's alternative claim that he was seized when Mercado issued a verbal command to stop was not properly preserved for this appeal. The state also disagrees with the defendant's claim that he was seized when the police officers approached him, and instead, it contends that the court properly determined that the defendant was seized when Morales conducted a patdown search for weapons. We agree with the state that the defendant did not properly preserve his claim for our review with respect to Mercado, and that the defendant was seized when Morales conducted a patdown search for weapons.

A

We first conclude that the defendant's claim that he was seized when Mercado commanded him to stop was not preserved for review on appeal. We therefore decline to review it.

At the hearing on the motion to suppress before the trial court, the defendant argued that he was seized at two alternative points in time: "at the moment that the two police cars were in the parking lot and the three

officers exited their vehicles," or alternatively, "when he was told to submit to a patdown." The defendant did not claim, as he presently does on appeal, that he was seized when Mercado "commanded the defendant to stop." In asserting this unpreserved claim on appeal, the defendant did not affirmatively request review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] Nevertheless, pursuant to our Supreme Court's recent decision in *State* v. *Elson*, 311 Conn. 726, 740–55, 91 A.3d 862 (2014), we must afford *Golding* review when the defendant has "present[ed] a record that is [adequate] for review and affirmatively [demonstrated] that his claim is indeed a violation of a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Elson*, supra, 755.

We conclude that the defendant has failed to present a record that is adequate for review, and thus, *Golding* review is not warranted. In support of this conclusion, we note that there is no record of Mercado's personal account of the incident in question because he was not called as a witness to testify at the defendant's motion to suppress hearing. Additionally, Morales and Lawlor gave limited and conflicting testimony regarding the "verbal command" allegedly issued by Mercado, and the defendant did not seek an articulation pursuant to Practice Book § 66-5 to illuminate the court's factual findings, if any, with respect to Mercado's involvement in the events preceding the defendant's arrest.

Therefore, because the defendant failed to present a record that is adequate for review, we decline to review his claim that he was seized when Mercado issued a verbal command to stop.

B

We now turn to the defendant's claim that he was seized when the officers exited their cars and approached him in the Subway parking lot. A person is "seized" within the meaning of article first, §§ 7 and 9, of our state constitution when, "by means of physical force or a show of authority, his freedom of movement is restrained. . . . The key consideration is whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. . . . The inquiry is objective, focusing on a reasonable person's probable reaction to the officer's conduct. . . . A proper analysis of this question is necessarily fact intensive, requiring a careful examination of the entirety of the circumstances in order to determine whether the police engaged in a coercive display of authority such that a reasonable person in the defendant's position would not have felt free to leave." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *State* v. *Burroughs*, supra, 288 Conn. 844–846.

It is well established that a reasonable person would

not believe that his or her freedom to leave is restricted based on "[t]he mere approach by a police officer, either in a police car or on foot . . . ." (Internal quotation marks omitted.) Id., 849–50. "On duty police officers interact with individuals for a variety of reasons, many of which have nothing to do with the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. . . . It hardly can be suggested that every encounter between a police officer and an individual, regardless of whether such police officer is investigating criminal activity, constitutes a seizure. For example, a purely consensual encounter between a police officer and an individual in a public place is not necessarily a seizure." (Citation omitted; internal quotation marks omitted.) *State* v. *Kimble*, 106 Conn. App. 572, 588, 942 A.2d 527, cert. denied, 287 Conn. 912, 950 A.2d 1289 (2008). "Although we recognize that a uniformed law enforcement officer is necessarily cloaked with an aura of authority, this cannot, in and of itself, constitute a show of authority sufficient to satisfy the test for a seizure . . . . The consequences of a contrary conclusion would be significant indeed, for any police presence at all would then necessitate a finding of a show of authority sufficient to satisfy the test for determining whether a seizure occurred." (Citations omitted.) *State* v. *Burroughs*, supra, 288 Conn. 849–50; see also *United States* v. *Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

The facts found by Judge Rodriguez and our independent review of the record demonstrate nothing more than a benign police presence in the Subway parking lot. The court's oral decision portrays an unremarkable scene of three uniformed officers approaching the defendant as part of a routine investigation to obtain identification and determine his purpose for being in the lot. In addition to the facts set forth in the court's oral decision, the record does not contain any evidence suggestive of threatening or coercive police conduct. For instance, there is no evidence that the police engaged their lights or sirens when they entered the Subway parking lot, that they brandished their weapons, or that they impeded the defendant's ability to move, either physically or verbally. See *State* v. *Burroughs*, supra, 288 Conn. 849 (2008) (defendant not seized where police did not "activate their overhead flashing lights, side spotlights or sirens, direct any verbal commands to the defendant or communicate with him in any way" [footnote omitted]); *State* v. *Rodriguez*, 14 Conn. App. 574, 579, 542 A.2d 342 (1988) ("[u]nless the officer [signaled] the defendant to stop or impeded his movement in any way, the defendant was not seized"). We conclude, therefore, that the defendant was not seized when the police approached him because a reasonable person in the defendant's position would not have believed that it was impermissible to

leave the scene.

## II

Although the defendant was not seized when the police initially approached him, we agree with the trial court's conclusion that he was seized when Morales conducted a patdown search for weapons. See *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) ("whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person"); *State v. Santos*, 267 Conn. 495, 504, 838 A.2d 981 (2004) (defendant seized when instructed to submit to patdown search). We therefore must next determine whether, at the time of the seizure, there was a reasonable and articulable suspicion that criminal activity was afoot. See *State v. Benton*, 304 Conn. 838, 843, 43 A.3d 619 (2012). We conclude that there was such a reasonable and articulable suspicion, and therefore, the defendant's constitutional rights were not violated.

"The standards governing our analysis under article first, §§ 7 and 9, of our state constitution mirror those set forth by the United States Supreme Court in *Terry v. Ohio*, [supra, 392 U.S. 1], with regard to [federal] fourth amendment analysis . . . . [T]he touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security . . . and that reasonableness depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers . . . . [A] police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest. . . .

"Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . In determining whether a detention is justified in a given case, a court must consider if, relying on the whole picture, the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . The threshold for reasonable and articulable suspicion requires less than probable cause . . . . The determination is not a technical one, but is informed by the factual and practical considerations of everyday life. . . . In this respect, the perceptions of an experienced police officer might have more significance to him in determining whether the law is being violated at a given time and place than they would have to a layman . . . ." (Citations omitted;

internal quotation marks omitted.) *State* v. *McCormack*, 132 Conn. App. 490, 497–98, 33 A.3d 264 (2011), cert. denied, 303 Conn. 932, 36 A.3d 694 (2012).

Judge Rodriguez determined, on the basis of the totality of circumstances, that there was a reasonable and articulable suspicion to conduct a patdown search of the defendant. In support of this conclusion, the court stated as follows: "[a]lthough there was no reasonable, articulable suspicion to search the defendant at the time that the police initially observed him for simply being present at the Subway parking lot, and they could have simply ordered the defendant to leave, the police chose to approach the defendant to obtain identification and determine why he was standing alone in the dark on a winter night and in the shadow of a commercial parking lot. . . . [A]lthough this is normal routine, legitimate and good police investigative techniques, it doesn't permit a patdown. However, the defendant's actions and utterances in response to the police presence, in addition to his presence as previously described, did create a reasonable and articulable suspicion that warranted a patdown search of the defendant for the safety of the officers. . . . The court finds that the officer's search of [the defendant] was based on valid justifiable reasons, which were created by the defendant himself."

We agree with the court's conclusion that the totality of circumstances raised a reasonable and articulable suspicion of criminal activity to justify a patdown search of the defendant. At dusk in a high crime area, the defendant was standing alone in the parking lot of a Subway restaurant, which itself had been the subject of at least one robbery. Although the defendant's presence in a high crime area at night was not, in itself, sufficient to create a reasonable and articulable suspicion; see *State* v. *Oquendo*, 223 Conn. 635, 655 n.11, 613 A.2d 1300 (1992); it is significant to raise a reasonable and articulable suspicion when viewed alongside the other factual circumstances. See *State* v. *Lipscomb*, 258 Conn. 68, 78, 779 A.2d 88 (2001); *State* v. *Rodriguez*, supra, 14 Conn. App. 578. Significantly, in this case, as the police approached the defendant, he spontaneously stated, "I didn't rob anyone." This unsolicited statement, uttered outside of an establishment that previously had been robbed, created a reasonable and articulable suspicion that the defendant *had*, in fact, participated in a robbery, thereby creating a reasonable and articulable suspicion of criminal activity.

Moreover, when the police approached the defendant, he made furtive motions to his waistband. "[A] suspect's attempt to reach into his pocket or some other place where a weapon may be concealed is a fact that supports a reasonable suspicion that the suspect is armed and dangerous." *State* v. *Mann*, 271 Conn. 300, 325–26, 857 A.2d 329 (2004), cert. denied, 544 U.S. 949,

125 S. Ct. 1711, 161 L. Ed. 2d 527 (2005). The patdown search was thus based upon a reasonable and articulable suspicion that the defendant was armed, and was conducted for the safety of the police officers.

Therefore, in light of the totality of the circumstances, we agree with the trial court's conclusion that there was a reasonable and articulable suspicion of criminal activity when Morales seized the defendant. Accordingly, the trial court properly denied the defendant's motion to suppress the narcotics evidence obtained pursuant to a lawful patdown search for weapons.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant's plea was conditioned on his right to appeal the denial of his motion to suppress evidence in accordance with General Statutes § 54-94a or Practice Book § 61-6.

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.